## Frank Handfelder, Appellee, v. East Side Levee & Sanitary District, Appellant.

### (Not to be reported in full.)

Appeal frm the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed July 21, 1915.

### Statement of the Case.

Action in case by Frank Handfelder against the East Side Levee and Sanitary District to recover damages alleged to have been occasioned by a levee which obstructed the flow of water on plaintiff's premises, causing damage by overflow. From a judgment for plaintiff, defendant appeals.

The East Side Levee & Sanitary District was organized under an act of the General Assembly, en-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

titled "An Act to create sanitary districts in certain localities, and to drain and protect the same from overflow for sanitary purposes," approved May 17, 1907, in force July 1, 1907 (J. & A. vol. 3, ch. 42, ¶¶ 4325-4352, inc.). As a part of the scheme for drainage and sanitary improvement adopted by defendant, it caused to be constructed, after the 1st of March, 1910, across a part of Choteau township in Madison county, what is known as the Cahokia Creek Diversion Channel, an artificial waterway, beginning at Cahokia Creek on the east and running in a westerly direction to the Mississippi River, a distance of about four miles. This diversion channel had levees on each side thereof, the levee on the north in the vicinity of the premises of plaintiff being from ten to fifteen feet in height. The purpose of this channel was to divert the waters of Cahokia Creek (a natural water course) or a part thereof, and carry them into the river by means of this artificial channel.

The diversion channel was located entirely outside the boundaries of the district, and the premises of plaintiff did not constitute any part thereof.

Immediately south of the premises occupied by plaintiff as tenant was a public highway, and immediately south of the highway was the north levee of the diversion channel, the levee being about one hundred feet from the dwelling house occupied by plaintiff and his family.

The public highway lying between plaintiff's premises and the north levee was slightly above the level of the land lying to the north, but was not of sufficient height to constitute an appreciable barrier to the flow of surface water from said premises.

Through the eastern portion of the farm were located the tracks of four railroads. These railroads entered the farm very near its southeast corner and bore slightly to the west as they proceeded north. West of the farm, and something over three thousand feet

west of the railroads above mentioned, were the tracks of another railroad. The west line of the farm was very near the center of the tract of land bounded by the railroads aforesaid, to the east and west. All of the lines of railroads above mentioned, north of the levee in question, were located upon grades or embankments, which connected with the north levee constructed by defendant, and at the point of intersection were approximately the same height of the levee.

As a result of these structures above mentioned, the lands occupied by plaintiff were located in a pocket or basin, bounded on the east and west by the railroad grades or embankments, and on the south by defendant's levee.

The lands in question and other lands in the immediate vicinity, comprising several hundred acres, were very nearly level, having a slight fall to the south or southeast, and naturally drained in that direction, until such natural drainage was obstructed by defendant's levee.

To take care of the water coming from this territory lying north of defendant's levee, and between the grades of the railroads above mentioned, defendant placed only one twenty-four inch pipe through its north levee located a short distance west of the railroad grade on the east side of the farm.

The pipe in question, at its intake end was equipped with a valve operated by means of a screw, and at the outlet had a flap valve designed to operate automatically by water pressure. The evidence tended to show that no arrangements had been made by which the intake end of this pipe could or would be kept free from accumulations of drift so that the water could flow through the same without interruption.

The evidence further tended to show that on the night of July 13, 1912, being Saturday night, and again on the following Tuesday night, there occurred very heavy rains on and in the vicinity of the premises

occupied by plaintiff, and the evidence tended to show that, on Sunday morning following the first rain, a large portion of the farm was under water; that the water entirely surrounded the house, barn and other buildings, filled the well and cellar, and extended over the public highway from the railroad grade on the east to the railroad grade on the west, and that over this road the water was from a foot to eighteen inches deep, and was of such extent and depth that it was backed up to and overflowed a part of the farm adjoining plaintiff's premises on the north. The evidence tended to show that this water was held upon these premises by defendant's levee which prevented its escape to the south.

Witnesses who had lived in the neighborhood of the premises in question for upwards of thirty years testified that they had never, upon any former occasion, seen this highway under water. The evidence also tended to show that all along defendant's levee between the railroad grades, the water was backed up to a depth of two feet or more, and at the intake pipe through the levee, on the morning following this rain, the water was over five feet deep.

As a result of the flooding of plaintiff's premises, the evidence tended to show that one hundred chickens were drowned; that several acres of potatoes were destroyed; that wheat in the shock was damaged; the pasture lands and the growing corn materially injured; the well and cellar flooded and the premises were rendered unsanitary.

Thomas E. Gillespie and Williamson, Burroughs & Ryder, for appellant.

C. H. Burton, for appellee.

Mr. Presiding Justice McBride delivered the opinion of the court.

Handfelder v. East Side Levee & San. District, 194 Ill. App. 262.

## Abstract of the Decision.

1. DRAINAGE, § 112*—*duty as to persons outside of district.* A levee and sanitary district which is organized for the express purpose of "draining property, protecting it from overflow, and for sanitary purposes" owes the duty to one outside its district to construct its levees in such a manner as not to obstruct the natural flow of surface water from such premises.

2. DRAINAGE, § 112*—*liability for flooding lands outside of district.* A levee and sanitary district which, in the construction of a levee, exercises reasonable care to furnish an outlet for surface waters from land adjoining the district equal to that existing before the construction of the levee, is not liable to a tenant of such adjoining land for damages due to overflow.

3. DRAINAGE, § 112*—*when overflow not due to act of God.* In an action against a levee and sanitary district by a tenant of adjoining premises outside the district for damages to crops and other property due to overflow, evidence *held* to sustain a finding that the damage was not due to an "act of God," where the only outlet was a pipe which was of insufficient dimensions which became clogged with refuse, although the rainfall was unusually heavy.

4. DRAINAGE, § 112*—*right of tenant outside of district to recover for flooding of land.* A tenant of lands outside a sanitary and levee district may sue and recover for the loss to crops and other property occurring from the negligence or wrongful act of a levee and sanitary district in the construction of a levee resulting in the flooding of tenant's land after an extraordinary flood, although the crops were planted after the levee was constructed.

5. ACTION, § 61*—*what constitutes a continuing nuisance.* The failure of a levee and sanitary district to provide a proper and sufficient outlet for the escape of surface water -from adjoining land outside the district, so that a tenant of such adjoining land may have as sufficient an outlet for the drainage of surface waters due to extraordinary floods as existed before the erection of the levee, constitutes a continuing nuisance for which successive suits may be maintained.

6. DRAINAGE, § 112*—*when overflow from adjoining premises not adequately provided for.* In an action against a levee and sanitary district to recover damages due to overflow, evidence *held* sufficient to sustain a finding that a twenty-four inch pipe through the levee did not furnish an outlet for water coming from adjoining premises outside the district, equal to that existing prior to the construction of the levee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same. topic and section number.

Handfelder v. East Side Levee & San. District, 194 Ill. App. 262.

7. DRAINAGE, § 112*—*what evidence admissible in action for over-flow.* Evidence that there were stalks in the intake end of an outlet pipe of a levee, constructed for the passage of surface water from land adjoining a levee and sanitary district, is admissible in an action by a tenant of such premises for damage to his crops and other property alleged to be due to "negligent construction" of such levee.

8. DRAINAGE, § 112*—*evidence admissible in action for overflow.* Evidence in an action by a tenant of premises outside a levee and sanitary district against such district for damages to his crops and other property alleged to be due to the failure to provide a proper outlet for surface water, that in stages of high water the river would rise higher than the intake end of the pipe through the levee, is admissible.

9. EVIDENCE, § 233*—*when weather bureau records inadmissible.* The records of the weather bureau at St. Louis that the greatest rainfall occurring in over forty years occurred during a particular storm are inadmissible to prove conditions existing in Madison county in an action by a tenant occupying premises outside a levee and sanitary district against such district for damages to his crops and other property, alleged to be due to the accumulation of water as a result of the improper construction of outlets in the levee for the passage of surface water.

10. APPEAL AND ERROR, § 1566*—*when erroneous instruction harm-less* The giving of an erroneous instruction relating to the measure of damages does not constitute reversible error when it is not assigned as error that the damages awarded are excessive.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.