# Elizabeth Atherton, Appellee, v. East Side Levee & Sanitary District, Appellant.

1. SANITARY DISTRICTS—*what is duty of in constructing levee and canal and changing watercourse.*  A levee and sanitary district has power to construct a levee and canal whereby the course of a watercourse is changed, but must exercise this power in such a manner as not to obstruct or retard the natural flow of the water and not to throw or hold it back upon adjacent land to the damage thereof.

2. SANITARY DISTRICTS—*what is duty as to restoring changed stream to former or useful state.*  The duty of one interfering with the flow of water in a stream to restore the stream to its former state or so restore it as not to impair its usefulness rests with the same force on a municipal corporation, such as a levee and sanitary district, as it does on an individual.

3. ACTION, § 61*—*when only one recovery may be had for damages for construction of improvement on land.*  Damages resulting from the construction of a permanent and lawful improvement accrue at the time of the construction and there can be only one recovery therefor, the measure being the depreciation of the market value of the land.

4. ACTION, § 61*—*when successive actions may be maintained for negligent erection of structure.*  Where a structure, though permanent and lawful, is negligently or defectively constructed, it constitutes a continuing nuisance, and each injury occasioned by it creates a new cause of action and successive recoveries may be had for the successive injuries caused by it.

5. SANITARY DISTRICTS, § 12*—*when right of action for construction of levee and canal lies in favor of adjacent landowner.*  Where none of the land of an adjacent owner is taken for the construction of a levee and canal, such owner has no right of action because of their construction until he has sustained damage, in which event he may recover for such damage.

6. SANITARY DISTRICTS, § 13a*—*what duty imposed upon as to disposal of water to prevent overflow by construction of levee and canal.*  It is the duty of a sanitary district constructing a levee and canal for the purpose of changing the course of a stream to make provision for disposing of the water which escapes from the stream in time of overflow, the same duty being imposed in this respect with regard to surface water, channel water and overflow or flood water.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

56    APPELLATE COURTS OF ILLINOIS.

Atherton v. East Side Levee & Sanitary Dist., 211 Ill. App. 55.

7. SANITARY DISTRICTS, § 13a*—*what floods must be guarded against in constructing levee and canal to divert watercourse.* A sanitary district in constructing a levee and canal to divert a watercourse is required to provide an outlet for only the waters of such floods or freshets as men of ordinary prudence could have foreseen, which includes the necessity of providing against a rainfall which is greater than ordinary.

8. SANITARY DISTRICTS—*what are questions for jury in action to recover damages for overflow due to negligent construction of levee and canal.* In an action against a sanitary district to recover damages alleged to have been caused by the negligent and defective construction of a levee and canal whereby plaintiff's land was overflowed, the questions whether the overflow was due to defendant's alleged negligence in constructing the levee and canal or to such an extraordinary flood as ordinary prudence could not have anticipated, and whether the rainfall causing the overflow was an extraordinary flood in the locality, are for the jury.

9. SANITARY DISTRICTS, § 17*—*when evidence supports verdict for plaintiff in action for negligence causing flooding of land.* In an action against a levee and sanitary district to recover for damages by the flooding of land, alleged to have been caused by defendant's negligent and defective construction of a levee and canal, evidence *held* sufficient to support a verdict for plaintiff.

10. SANITARY DISTRICTS, § 17*—*when evidence as to other obstructions in stream below defendant's is inadmissible in action for damages for flooding land.* Where the declaration, in an action against a sanitary district to recover for damage to land by flooding, alleges that the injury was caused by defendant's unlawfully obstructing or retarding the flow of water, it is not error to refuse to permit defendant to show the location and character of other obstructions further down the stream than defendant's obstruction, where there is nothing in the case warranting the admission of the evidence in mitigation of damages.

Appeal from the Circuit Court of Madison county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 5, 1918. Rehearing denied June 22, 1918.

F. A. GARESCHE, J. B. HARRIS and D. H. MUDGE, for appellant; THOMAS E. GILLESPIE, of counsel.

WILLIAMSON, BURROUGHS & RYDER, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an action by appellee to recover damages alleged to have been occasioned by the construction and maintenance of appellant's levee and diversion canal. It is claimed by appellee that the levee and canal interfered with the natural flow of the waters of Cahokia Creek and Indian Creek and held the same back upon premises owned by her; thereby destroying and injuring various crops, personal property and the dwelling and outbuildings on said premises.

The declaration consists of two counts, the first of which alleges that on August 20, 1915, appellee was possessed of certain real estate in Madison county, Illinois; that shortly prior to said date, heavy rain-storms occurred and large quantities of water fell in the vicinity of appellee's land; that Cahokia Creek, a natural watercourse, flowed near and past the land of appellee and from time immemorial carried off and drained the water falling and flowing upon her lands; that appellant wrongfully and negligently caused to have erected and placed across the channel of Cahokia Creek, a dam, levee or obstruction about one-half mile south of her land and wrongfully and negligently placed in said channel various logs, piles, chains and other obstructions, and thereby greatly interfered with, lessened and reduced the flow of water through the said natural watercourse, and that by reason thereof the water from the rain above referred to was retarded and held back upon her land, whereby her buildings and crops were injured. The second count alleges that appellant undertook to divert and change the flow and outlet of Cahokia Creek from a point about one-half mile south of appellee's land and to carry the waters of said creek from that point through an artificial channel, and that in the construction of said artificial channel appellant carelessly, negligently and wrongfully failed to make an outlet sufficient in

58     APPELLATE COURTS OF ILLINOIS.

Atherton v. East Side Levee & Sanitary Dist., 211 Ill. App. 55.

size to carry away the waters of Cahokia Creek; and that on account of the insufficient size of said outlet into said artificial channel the waters of Cahokia Creek were unable to flow and escape as in a state of nature, but were retarded and held back upon appellee's land whereby her buildings and crops were damaged. It was stipulated on the trial that appellant might introduce any evidence which would be admissible under any special plea well pleaded. Upon the trial of the case a verdict in the sum of $500 was returned in favor of appellee. Motion for new trial having been overruled, judgment was entered on the verdict and the district brings the case here by appeal.

A short distance after Cahokia Creek emerges from the bluffs it is joined by Indian Creek which comes from a northwesterly direction. From this point Cahokia Creek formerly took a tortuous and meandering course through what is termed the American Bottoms and flowed into the Mississippi River at a point approximately 30 miles south of the junction of Cahokia and Indian Creeks. Appellant is a municipal corporation organized under an act of the legislature entitled "An Act to create sanitary districts in certain localities and to drain and protect the same from overflow, for sanitary purposes," approved May 17, 1907 (J. & A. ¶ 4325 et seq.). After appellant was organized it passed an ordinance for the construction of Cahokia Creek diversion channel, for the purpose of diverting the waters of Cahokia Creek from a point about one-half mile below and south of the junction of Cahokia Creek and Indian Creek, through an artificial channel about 4½ miles in length, directly into the Mississippi River instead of following the tortuous channel of the creek. Appellee's land consists of 28 acres lying immediately between Cahokia and Indian Creeks just north of their junction. The distance across plaintiff's land from Cahokia to Indian Creek is about a quarter of a mile. West of Indian Creek and appel-

lee's land, several hundred feet, there is a natural elevation in the ground known as Gillham Ridge, which is probably 3 or 4 feet higher on an average than appellee's land. The land east of appellee's premises and between Cahokia Creek and the bluffs is several hundred feet in width and is lower than the land to the west of Indian Creek. The Cahokia Creek diversion channel was completed in 1912. It was excavated about 12 or 13 feet below the natural surface of the ground, was approximately 100 feet wide at the bottom with a two to one slope and an average width of about 152 or 153 feet and extended almost due west to the Mississippi River. Levees from 4 to 8 feet high were constructed on both sides of the channel. The levee on the south side of the channel crossed Cahokia Creek and then extended in a northeasterly direction across the lowland east of Cahokia Creek to the bluffs. As completed there is a solid earth embankment beginning at the bluff or high ground a little more than a quarter of a mile east of appellee's land and extending southwesterly for some distance and thence substantially west, crossing the old channel of Cahokia Creek at a point about one-half mile south of appellee's land. The elevation of this levee east of the creek is about 447 or 448 feet (Memphis datum). Appellee's land has an average elevation of 442 or 443 feet. Her dwelling was near the highest point of her land, which was about 443, and was on a foundation about 2 feet high. On August 20, 1915, there was a rainfall in that community of about 8¼ inches. As a result thereof Cahokia and Indian Creeks overflowed their banks and the water stood in appellee's house at a depth of 5 or 5½ feet, so that the water at this point was about 7 feet deep over appellee's land. This suit was brought to recover damages sustained by appellee on account of this overflow to her crops, dwelling, outbuildings and household goods. The evidence shows that south of appellant's levees and extending across

Cahokia Creek valley there were, prior to the construction of appellant's levees, certain railroad and other embankments.

Appellant contends the judgment in this case should be reversed for the reasons, First: That the levee and canal complained of are permanent, lawful improvements, and that any damages caused by their construction are recoverable in a single action only, and that the measure of such damages is the depreciation in the fair cash market value of the land or leasehold injured thereby. Second: That appellee's damages were caused by an extraordinary rainfall and that appellant is not required by law to provide and care for rainfalls of that character. Third: That her damages were due to natural causes, and would have occurred even though the levee and canal had not been constructed; and fourth: That the trial court erred in not permitting appellant to show in detail the existence and character of certain railroad embankments below appellant's levee at the time it was constructed. All these reasons with the exception of the fourth may be considered together. The contention that appellant had the authority under the law to construct the levee and canal and thus change the course of Cahokia Creek is correct as a principle of law. It is as equally well established that while appellant had this right it must have exercised that authority in such a manner as not to obstruct or retard the natural flow of the water, and not to throw or hold it back upon adjacent land to the damage of the same. "It is settled by all the authorities that it is the right of each proprietor of land upon a natural watercourse to insist that the water shall continue to run as it has been accustomed to do, and to insist that no one shall obstruct or change its course injuriously to him without being liable in damages." (*Ohio & M. Ry. Co. v. Thillman*, 143 Ill. 127.) The law imposes upon any one interfering with the flow of the water in a stream

to restore the stream to its former state or to so restore it as not to impair its usefulness. The same obligation rests upon a municipal corporation in this respect as rests upon an individual. (*Ohio & M. Ry. Co. v. Thillman, supra; Sanitary Dist. of Chicago v. Ray,* 199 Ill. 63; *Handfelder v. East Side Levee & Sanitary Dist.,* 194 Ill. App. 262; *Hoehn v. East Side Levee & Sanitary Dist.,* 203 Ill. App. 48.)

Appellant's contention that damages resulting from the construction of a permanent and lawful improvement accrue at the time of its construction for which there can be only one recovery, and the measure of which is the depreciation of the market value of the land, is also correct as a proposition of the law. That rule, however, presupposes the lawful and proper construction of the improvement and does not prevent the recovery of damages resulting from its alleged negligent and wrongful or defective construction. The authorities uniformly hold that such a permanent and lawful structure, negligently or defectively constructed, constitutes a continuing nuisance, and each injury thereby occasioned creates a new cause of action and successive recoveries may be had for successive injuries caused by such negligent or defective construction. (*Ohio & M. Ry. Co. v. Thillman, supra; Sanitary Dist. of Chicago v. Ray, supra; Ramey v. Baltimore & O. S. W. R. Co.,* 235 Ill. 502; *Handfelder v. East Side Levee & Sanitary Dist., supra.*) The record here does not disclose that any lands in the possession of appellee were taken for the construction of the levee or canal and she would not, therefore, have any right of action because of their construction until she had sustained damages, but when such damages had occurred she should have a right to recover therefor. (*Hoehn v. East Side Levee & Sanitary Dist., supra.*)

The principal negligence charged in the declaration is, in substance, that appellant wrongfully and negli-

62    APPELLATE COURTS OF ILLINOIS.

Atherton v. East Side Levee & Sanitary Dist., 211 Ill. App. 55.

gently caused to be erected and placed across Cahokia Creek a natural watercourse, a certain dam or levee, and thereby greatly interfered with, lessened and reduced the natural flow of water in such watercourse and undertook to divert the natural flow of the water of Cahokia Creek into the diversion canal and negligently and wrongfully failed to provide a sufficient outlet for the water. The proof shows that original plans and specifications for the work provided for a spillway 3 feet deep and 50 feet wide over the levee where it crosses Cahokia Creek, but this spillway was never built. The land east of Cahokia Creek and appellee's premises, and which is crossed by that portion of the levee extending from the point where it crosses Cahokia Creek northeasterly to the bluffs, is low. The evidence tends to show that in times of overflow, prior to the building of the levee, a portion of the water from Cahokia Creek would run off in that direction. It was as much appellant's duty to provide for this overflow water as the channel water of Cahokia Creek. The courts make no distinction, regarding appellant's duty in this respect, between surface water, channel water and overflow or flood waters (*Chicago, P. & St. L. Ry. Co. v. Reuter,* 223 Ill. 387). The evidence also shows that in times of overflows prior to the construction of the levee the water would extend from Gillham's ridge on the west of appellee's premises to the bluffs on the east, a distance of about one-half mile, to a depth of 2 or 3 feet, and possibly more on one or two occasions. Counsel for appellant state in their argument, and such statement is supported by the testimony of one of appellant's engineers, that in order to accommodate the same quantity of water as would be contained in a valley one-half mile wide and 3 or 4 feet deep, it would require a diversion channel, excavated to the elevation of which Cahokia Creek diversion channel is excavated, more than 600 feet wide. Cahokia Creek diversion channel is only about

100 feet wide at the bottom and has an average width of about 152 or 153 feet, and it is manifest that this channel could not accommodate the flood waters of the valley in times of overflows of the same magnitude as some of those which occurred prior to the construction of the levee.

The evidence is somewhat conflicting as to whether the rain of August 20, 1915, was an unprecedented rainfall in that community. Several witnesses testified it was, while other witnesses recalled former rains at least almost as heavy. One witness produced by appellant who had acted as observer for the United States Weather Bureau testified that a rain in July, 1912, at Wanda, a short distance from appellee's land, was only one-fourth inch less than the 1915 rain. It is true that in constructing its levee and canal appellant was required to provide an outlet for only the waters of such floods or freshets as men of ordinary prudence could have foreseen. This has been held to mean more than the ordinary rainfall. In considering this question in the case of *Ohio & M. Ry. Co. v. Ramey,* 139 Ill. 9, the Supreme Court of this State used the following language: ''The principle clearly is that, although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred, and, it may be, at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have long resided in this State that our streams are occasionally subject, after intervals which are sometimes of shorter and at other times of longer duration, to great floods, occasioned by very heavy rainfalls, and their heights are known by those who have felt interested in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary, *i. e.,* they were extraordinary; and yet it is just as certain that like

64     APPELLATE COURTS OF ILLINOIS.

Atherton v. East Side Levee & Sanitary Dist., 211 Ill. App. 55.

rainfalls will occur in the future as it is that the same laws of nature by which they are produced, and the same conditions to be affected by those laws, will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal, and therefore beyond reasonable anticipation, and it is hence but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question then is not whether appellant has sufficiently provided for the escape of the water of ordinary floods, but has it provided for the escape of the water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred after intervals, though of irregular duration, in the past?" After quoting this language with approval in the case of *Chicago, P. & St. L. Ry. Co. v. Reuter, supra,* the court said, as may be well said in this case: "There was a great deal of evidence submitted on this question, some of it conflicting, but from the evidence in this record it could not by any possible means be held that the damage was caused by such an unprecedented rainfall as could not have been reasonably anticipated. (*Drainage Com'rs v. Illinois Cent. R. Co.,* 158 Ill. 353; *Ohio & M. Ry. Co. v. Thillman, supra.*) In any event, this was solely a question for the jury, and if they were correctly instructed on that point this court cannot interfere." There is no contention in the case at bar that the jury were not correctly instructed on this point.

The evidence clearly shows that appellee was damaged to the amount of the verdict by the overflowing of her land. Whether such overflow was due to appellant's alleged negligent or defective construction of its levee and canal or to such an extraordinary flood as ordinary prudence could not have anticipated were questions of fact to be determined by the jury, as was

also the question whether the rainfall of August, 1915, was an extraordinary flood in that locality. In the case of *Sanitary Dist. of Chicago v. Ray, supra,* the court said: "The evidence tended to prove that the defendant excavated the new channel to a greater depth than the old, and threw up embankments on the sides of the channel, but did not make the new channel of sufficient capacity to carry off the water of the river in time of freshets, and by the diversion of such waters caused the land in question to overflow. The land was bottom land, near the river, and was subject to overflow before the channel was changed, but there was evidence tending to prove that such overflow, and consequent injury to crops, etc., were increased by the alleged negligent construction of the new channel, and while it seems from the record that it would not be a wholly unjustifiable inference to draw that the defendant has been charged with losses which would have occurred had the channel remained as it was in a state of nature, still we cannot say that the verdict is so clearly against the weight of the evidence as that it should be set aside for that reason." With little change that language is most applicable to the facts in this case, and by like reasoning we conclude that the verdict in this case should prevail.

Upon the trial the court refused to permit appellant to show the location and character of other railroad embankments and levees in Cahokia Creek valley south of or further down the stream than the levee of appellant, and the question is presented whether a refusal of this evidence by the court was reversible error. It was charged in the declaration here that appellant had unlawfully obstructed or retarded the flow of the water to the damage of appellee's premises, and it was no defense for appellant to show that others had been guilty of a like injury to appellee by obstructing the natural flow of the waters in that locality through the construction of embankments prior to the

construction of appellant's levee. While cases might arise where such evidence would be permissible in mitigation of damages, no state of facts was shown which appeared to us to have warranted the admission of such proof in this case. We find in the record no reason for the reversal of the judgment in this case and the judgment in favor of appellee is therefore affirmed.

*Affirmed.*