Ringering v. Wood River Drain. & Levee District, 212 Ill. App. 170.

ject to said mortgage indebtedness. Matheny, attorney for appellee, Lisetta Springer, testified that he drew the deed and that he put said clause in said deed for the reason that he knew that said premises were subject to a mortgage, but that so far as he knew he did not put this clause in at any one's request. Whether or not the evidence is sufficient to substantiate the finding made by the court is immaterial in view of what we have already said. We are satisfied that on this record the decree rendered by the trial court is in keeping with the equities of the case, and does substantial justice between the parties interested.

Finding no reversible error in the record the judgment of the trial court will be affirmed.

*Affirmed.*

---

## John A. Ringering, Appellee, v. Wood River Drainage & Levee District of Madison County, Illinois, Appellant.

**1.** DRAINAGE, § 112*—*what damages for overflow of land not contemplated at time of adoption of drainage plans.* Damages for overflow of land near a river, due to the construction of levees up stream which shut off the natural overflow of flood water in another direction and the failure to complete a direct channel three-quarters of a mile long to the outlet, which would have taken care of the flood water, if completed, were not contemplated at the time the drainage district was organized and the drainage plans were adopted.

**2.** DRAINAGE, § 50*—*when commissioners act in ministerial capacity rendering district liable for their acts.* Drainage commissioners act in a judicial or *quasi* judicial character in the adoption of plans and specifications for drainage work, but when undertaking to put the plans into effect, they are acting in a ministerial

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

capacity, and the drainage district is liable for overflow of land by flood water due to their acts.

3. DRAINAGE, § 112*—*when district estopped to show why outlet not completed.* A drainage district is not in position to offer as an excuse as to why an outlet, consisting of a direct channel from a small river to a large river, as a part of a drainage system, was not completed, that it still contemplates the construction of such outlet, where plans and specifications were adopted 3 years after the district was organized and 2 years later an application to the court for an additional assessment to complete the outlet was refused, and the flood, for which damages were sought, did not occur until one year later.

4. DRAINAGE, § 112*—*when evidence supports verdict for damages for overflow.* Evidence *held* sufficient to support a verdict for $1,565.45 as damages for overflow of land, due to the failure of a drainage district to complete its work of construction of an outlet for flood waters.

5. APPEAL AND ERROR, § 812*—*when objections to argument not sufficiently preserved for review.* Objections made to remarks of counsel in the argument to the jury are not sufficiently preserved for review where they do not appear in the bill of exceptions, except by affidavit.

6. APPEAL AND ERROR, § 1512*—*when remarks by court are harmless error.* Remarks made by the court in commenting on the evidence were not reversible error where no harm could have resulted to defendant therefrom, and the court stated to the jury that it was not attempting to influence the jury by anything that had been said.

7. MUNICIPAL CORPORATIONS, § 1236*—*when execution does not lie.* The ordering of an execution against a municipal corporation is error.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the March term, 1918. Affirmed. Opinion filed November 1, 1918. *Certiorari* denied by Supreme Court (making opinion final).

WILLIAM P. BOYNTON and CHARLES H. BURTON, for appellant.

BURROUGHS & RYDER and J. V. E. MARSH, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

172    APPELLATE COURTS OF ILLINOIS.

Ringering v. Wood River Drain. & Levee District, 212 Ill. App. 170.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

An action on the case brought in the Madison county Circuit Court by appellee against appellant, Wood River Drainage & Levee District of Madison County, and its commissioners, resulted in a finding of not guilty as to the commissioners and guilty as to appellant, Drainage & Levee District, and assessing damages at $1,565.45. The motion for a new trial was overruled and judgment was rendered on the verdict. To reverse said judgment appellant prosecutes this appeal.

Appellant, drainage district, was organized in the year 1909, and included in its boundaries the lands located along the stream known as "Wood River" which had its outlet in the Mississippi River. Said stream was very tortuous. Its upper portion comprised two branches known as "east" and "west" forks. These came together at a point in the northerly part of said district and flowed in one channel from thence to the Mississippi River. Said point of junction was north of the Village of East Alton. The declaration consisted of one count and, in substance, alleges that for a great many years prior to the formation of said district, in times of freshets and rainstorms, the flood waters from the "east" fork would overflow the banks as in a state of nature, at points north and east of Alton, and thence through said village and to the south into a body of water known as "Grassy Lake" and thence beyond the district; that appellee was a tenant farmer of certain lands in said district lying southwest of the stream in question, and at or near the mouth thereof, where it enters the Mississippi River; that in a state of nature said lands were not subject to overflow from flood waters of "Wood River." That by the plans adopted by the court in 1912, as aforesaid, the work in appellant district was divided into "sections," which comprised,

among others, an artificial channel direct to the Mississippi River, and up stream from the mouth of Wood River, about three-quarters of a mile; this work was known as "Section A." That certain levees were constructed by the commissioners along the sides of the stream, north of East Alton, and large volumes of flood waters which theretofore flowed towards "Grassy Lake" were diverted from their natural course, and were "kept in the channel of Wood River, and carried down and through the same to the east of and below the said Village of East Alton, to and upon the said lands occupied by the plaintiff," alleging damages, etc.

A demurrer to the declaration being overruled, a plea of the general issue was filed, a trial was had resulting in a verdict and judgment as above set forth. The record discloses that this drainage district was organized in 1909; that the plans for the construction of said district, being the straightening of the watercourse, the building of levees, bridges, etc., were approved by the County Court of said county in 1912 and the work was ordered to be done.

Bids were advertised for, but only one bid was received and that was largely in excess of the estimate and was rejected. Thereupon, the commissioners advertised for bids on the work in separate sections. One bid covering levee work, another channel work, another concrete culverts work, another cutting timber, building bridges, etc. Certain of the bids received were within the estimate and certain of them were above the same. Contracts were let for the greater part of the work of the district, not, however, including the work at the outlet known as "Section A."

In the course of the construction of the work, all of the funds of the district were expended without any work having been done on "Section A." An application was made by the commissioners of the district to the County Court for the levy of an additional assess-

ment to construct the work in "Section A," but the court refused to grant the same. On the afternoon of August 20, 1915, a very heavy rainfall occurred throughout the district and surrounding country, it being conceded to have been one of the heaviest rains that ever had occurred in that vicinity, and "Wood River" left its banks, washed over the top of the levee, washing out embankments and other improvements made by said district. At or near the point where it had been planned to cut the new channel in "Section A" the water overflowed the land in this locality, including the lands of appellee, covered the same with the deposits of silt and rubbish, thereby damaging appellee's crops and otherwise causing the injury complained of.

It is strenuously contended by appellant that inasmuch as the lands in question were included in and made a part of the district, that whatever damages the owner of these lands were entitled to were fixed at the time the lands were included in the district, either in the way of damages or by the cutting down of the assessment on said lands. On the other hand, appellee insists that the damages which he has sustained by reason of the flooding of his lands were never contemplated at the time the district was organized and said plans were adopted.

It cannot be successfully contended in this case that the damage to appellee's lands resulting from the flooding of the same as above stated was ever contemplated at the time of the adoption of the plans and specifications approved by the court in 1912 for the work of this district. No one would then have seriously considered the damages that would accrue and be suffered by lands situated as appellee's were by reason of the failure of the commissioners of the drainage district to complete the work of the district in so vital a part as its outlet. The point where the work on the watercourse ended, and the levee ended, to the

Mississippi River was only about three-quarters of a mile, whereas, the stream in its original course ran several miles before it emptied into the Mississippi River.  The evidence discloses that large quantities of water that in times of excessive rainfall flowed off in another direction were gathered into the drainage district and were held by its levees and carried down the stream to the point where "Section A" begins and were then allowed to flow off through the natural channel.  We do not think that appellant drainage district should escape liability for the damage done to appellee's land where caused by what, in effect, amounted to a change of the plans, by omitting to construct the outlet for the water gathered by the district within its levees and allowing it to overflow appellee's land.

In *Bradbury v. Vandalia Levee & Drainage Dist.*, 236 Ill. 36, the court at page 46 says: "The ground of distinction between corporations which are liable for the negligent or wrongful act of their agents or servants and those which are not, is that public involuntary *quasi* corporations are mere political or civil divisions of the State created by general laws to aid in the general administration of the government and are not so liable, while those which are liable have privileges conferred upon them at their request, which are a consideration for the duties imposed upon them. (*Kinnare v. City of Chicago,* 171 Ill. 332.)  Neither the State, nor any part of it, is divided by the legislature into drainage districts, nor do they have public duties thrust upon them without their consent.  The organization of a drainage district is for the sole and exclusive benefit of the territory within the district (*Commissioners of Union Drainage District v. Highway Com'rs,* 220 Ill. 176), and the lands within the district are assessed to pay the whole costs on the theory that they alone are benefited."

Appellant contends that where the commissioners have discretionary powers and are using those discre-

tionary powers in good faith and are acting, as in this case, under the instruction of competent engineers, that neither the commissioners nor the drainage district is liable for the consequences of their acts. So far as the adoption of the plans and specifications for the work in the district is concerned, the commissioners were acting in a judicial or *quasi* judicial character, but when they undertook to carry into effect those plans, then they acted in a ministerial capacity and the drainage district is liable for the consequence of their acts. *City of Chicago v. Seben*, 165 Ill. 371; *Johnston v. City of Chicago*, 258 Ill. 494.

In *Johnston v. City of Chicago, supra*, the Supreme Court at page 497 says: "In considering the question of liability the authorities usually hold that it must be considered that a municipality acts in a dual capacity, first, in exercising its governmental functions; and second, as a private corporation, enjoying powers and privileges conferred for its own benefit. When such municipal corporation is acting within its authority, in a ministerial character, in the management of its property, it is liable for the negligent acts of its employees although the work in which they are engaged will inure to the benefit of the municipality. On the other hand, whether the municipality is exercising judicial, discretionary or legislative authority conferred by its charter, or is discharging a duty imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers. (2 Cooley on Torts [3rd Ed.] 1014; *City of Chicago v. Seben*, 165 Ill. 371; 20 Am. & Eng. Encyc. of Law [2nd Ed.] 1197; Tiedeman on Mun. Corp. secs. 338, 349.)  *  *  *  A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skilful manner. *City of Chicago v. Seben, supra;* 4 Dillon on Mun. Corp. (5th Ed.), sec. 1741."

In this case we hold that the commissioners after the adoption of the plans and specifications which were approved by the court in 1912 in carrying out these plans and specifications, so far as the liability of the drainage district was concerned, were acting largely in a ministerial capacity, and the drainage district would be responsible for their acts.

It was contended by appellant that its commissioners were carrying out the work of the district and that ultimately they expected to complete the work in "Section A." This district was organized in 1909 and plans and specifications were adopted in 1912. An additional assessment was applied for in 1914 to complete the work in "Section A," but this was refused by the court. The flood did not occur until August 20, 1915. We think, therefore, that appellant is not in a position to offer as an excuse as to why this outlet had not been constructed, that it still contemplates its construction.

It is next contended by appellant that the damages were excessive. This proposition is not followed up in the argument to any extent and it is not pointed out wherein the verdict is excessive. The evidence appears to support the verdict as to the amount of the damages.

It is contended also that the court erred in its rulings on objections made to remarks of counsel in the argument to the jury. These objections do not appear in the bill of exceptions, except by way of affidavit. This is not sufficient and this manner of presenting this objection does not bring the question before the court. *Mayes v. People,* 106 Ill. 306; *Kemper v. Town of Waverly,* 81 Ill. 278; *Mayville v. French,* 246 Ill. 434.

Objection is also made to the remarks made by the court in commenting upon the evidence. We have examined the statement made by the court in question and are of the opinion that no possible harm could have resulted to appellant from the remarks com-

plained of, especially in view of the fact that the court stated to the jury that it was not attempting to influence the jury by anything that had been said.

Error is also assigned for the reason that an execution was awarded against appellant on the judgment rendered. Appellee concedes that the ordering of an execution against a municipal corporation is error and consents that this court may amend the judgment in that particular.

Finding no reversible error in the record the judgment of the trial court will be affirmed. The order of the trial court awarding execution against appellant will be set aside and held for naught.

*Affirmed.*