## Myers Construction Company, Appellant, v. Wood River Drainage and Levee District of Madison County, Illinois, Appellee.

1. DRAINAGE—*when declaration states cause of action for flooding contractor's equipment.* A declaration, in an action for damages by a contractor for excavation work against a drainage district, stated a cause of action which alleged that defendant contracted with plaintiff to excavate and remove rock from the bed of the channel of the river in question, and that in compliance with the contract plaintiff installed machinery and equipment and maintained many laborers, teams and wagons, and that while the work ws going on, defendant erected a high embankment or dam across said channel, which caused the waters to back up and overflow plaintiff's equipment and machinery, thereby causing damage to plaintiff.

2. DRAINAGE—*when contractor has right of action for damage to equipment caused by construction of a dam.* A contract by a river drainage district for the excavation and removal of rock from the bed of the channel of the river in question construed and the evidence reviewed in an action for damages to the contractor's machinery and equipment caused by the backing up of water through the construction of an embankment or dam across the channel of the river, and *held* that such dam should not have been constructed as against such contractor until the new channel had been excavated, widened and deepened as provided by plans and specifications, and that the district having seen fit to construct the dam before the said excavation had been completed, the contractor had a right of action for the damages suffered by reason thereof.

3. DRAINAGE—*when district liable for acts of independent contractor.* Where in an action by a contractor for excavation work against a river drainage district, for damage to his machinery and equipment by the backing up of water through the erection of a dam in the channel of the river by defendant, it was claimed that an independent contractor and not defendant was liable, *held* that defendant could not escape liability where the evidence tended to show that the dam in question was constructed according to plans and specifications furnished by defendant and under the direct supervision of its engineer.

4. DRAINAGE—*when district liable for acts of independent contractor.* Where in an action by a contractor for excavation work against a river drainage district, for damage to his machinery and equipment used by the backing up of water through the erection

474      APPELLATE COURTS OF ILLINOIS.

Myers Construction Co. v. Wood River D. & L. Dist., 221 Ill. App. 473.

of a dam in the channel of the river, it was claimed that an independent contractor and not defendant was liable, *held* that the court was justified in entering judgment against the defendant upon the ground that the work was done according to the specifications, which were defective in not making allowances for the probability of the caving in of the banks and the deposit of silt and sand in the bottom in the course of construction.

5. MASTER AND SERVANT—*when employer liable for acts of independent contractor.* One of the exceptions to the rule that a contractee is not liable for an injury resulting from the wrongful or negligent manner in which an independent contractor performed the work is that where the injury is due to the contractee's defective plans or methods pursuant to which the work was done, such methods being furnished and directed by the contractee, the latter is liable.

6. DRAINAGE—*what evidence shows that damage to contractor's equipment was caused by erection of dam.* Where in an action by a contractor against a river drainage district for damages to machinery and equipment through the backing up of water caused by the construction of a dam in the channel of such river, it was claimed that the overflow was caused by heavy rains, evidence to the effect that almost immediately after the dam went out on each occasion plaintiff was able to begin work, was considered conclusive to the effect that the dam rather than the rains was what caused the overflow.

7. DAMAGES—*what is measure of, for damage to contractor's equipment.* Where, in an action by a contractor against a river drainage district for damages to his machinery and equipment by reason of the backing up of water through the construction of a dam in the channel of the river, the proper measure of damages was the rental value of plaintiff's machinery and equipment and the damages incident to the tying up of the men employed by plaintiff in the work of excavation.

8. DRAINAGE—*what evidence admissible in action by contractor for damage to equipment.* Where in an action by a contractor against a river drainage district for damages to his machinery and equipment by reason of the backing up of water through the construction of a dam in the channel of such river, testimony was offered to the effect that plaintiff, on the backing up of the water over his machinery, stated to the district's engineer that he contemplated throwing down the job, and that the engineer insisted that plaintiff should stay on the job, and that the district would take care of whatever damage was suffered, *held* that such testimony was improper so far as the engineer undertook to bind the district to pay damages, but was admissible to show notice as to the effect of the construction of the dam as to overflowing

the rock where plaintiff was excavating, and of the delay being caused plaintiff in the prosecution of his work.

Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1920. Reversed and remanded. Opinion filed March 30, 1921.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

WILLIAM P. BOYNTON and BURTON & BURTON, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action in case was brought in the circuit court of Madison county by appellant, Myers Construction Company, against the Wood River Drainage and Levee District.

The declaration consists of two counts and charges that appellee, Drainage District, organized for the purpose of protecting a large area of land from overflow by the waters of Wood river, and having control of certain levees and channels for the purpose, among other things, of controlling the said waters in their course through Wood river, on August 23, 1918, entered into a written contract with appellant to excavate and remove a large amount of rock from the bed of the channel of Wood river, at or near a place in said district known as Milton bridge; that by the terms of said contract, appellant was required to begin said work by September 1, 1918, and to complete the same by December 1, of that year; that appellant, for the purpose of complying with said contract, installed at great expense in the channel of said river, at or near Milton bridge, a large amount of machinery and equipment, and employed and maintained a large number of laborers, teams and wagons used in the necessary performance of said work, and that while

476    Appellate Courts of Illinois.

Myers Construction Co. v. Wood River D. & L. Dist., 221 Ill. App. 473.

its said equipment and machinery were so installed in said river, and after appellant had begun the performance of its contract, appellee, through its officers and agents, erected and constructed, or caused to be erected and constructed, a high embankment or dam across the channel of said river at a point about a mile below Milton bridge, thereby obstructing and causing said waters to back up and collect in great quantities towards and beyond Milton bridge, and to overflow appellant's equipment and machinery, thereby damaging appellant in the sum of $3,000. The contract between the parties was set out *in hæc verba.* To said declaration appellee filed a plea of the general issue.

At the close of appellant's evidence, on motion of appellee, the court directed a verdict and rendered judgment against appellant in bar of action and for costs. To reverse said judgment this appeal is prosecuted.

The questions raised on the record by the assignment of errors are, first, as to whether or not the declaration states a cause of action; second, as to whether the evidence of appellant with the inferences reasonable to be drawn therefrom was sufficient to require that the case be submitted to the jury.

On the first proposition, it is contended by appellee that the declaration fails to state any neglect on the part of appellee which would render it liable to appellant in damages for the injuries suffered by it. In our opinion the averments of the declaration set forth a right of action on the part of appellant.

The second proposition, as to whether or not the evidence offered by appellant fairly tends to prove the averments of its declaration, raises a question of law as the facts are not disputed. The record discloses that Wood river drains a large area of land and at times of heavy rainfall frequently overflows. Appellee district was organized under the Levee Act of 1909

for the purpose of straightening Wood river, which is a tortuous stream, and for protecting the land comprising Wood river valley against overflow. The district comprised about 5,000 acres of land and embraced substantially all the land in Wood river valley from the bluffs to the Mississippi river and is about 2 miles wide and from 4 to 5 miles long.

At Milton bridge there was in the bed of the channel a large amount of rock formation covering an area of about 40 feet wide and 350 feet long. On August 23, 1918, appellant entered into a written contract with appellee district to excavate and remove this rock from the bed of the channel to a depth of from 1 to 5 feet. Under said contract appellant was to begin work by September 1 and was to complete same by December 1, 1918. The contract provided among other things: "The contractor will not be required to work when back water of the Mississippi river is above an elevation of 416, except that drilling should be done and can be done on higher parts of the work when back water is below 419.5. No work will be required when floods are in Wood river, or if it is making a discharge of more than 150 cubic feet per second. * * * Time lost by reason of floods or back water or rainy days will be added to the time of completion, but it is understood that only actual time as above noted will be taken into account."

About one mile below and southwest of Milton bridge, Wood river makes a rather abrupt curve and forms an elbow or "horseshoe." Prior to and at the time of the making of said contract, appellee district was engaged in a general scheme of straightening and deepening the channel of Wood river from the upper end of this "horseshoe" to the Mississippi river. This plan involved the cutting of a new channel across the short side or between the points of the "horseshoe," thereby eliminating the sharp curve made by the old bed of the river. Appellee had let the con-

tract to do this work to the firm of Mulville Brothers
and they in turn had sublet the same to Smith
Brothers, subcontractors. This work was being car-
ried on at the time appellant engaged by contract to
remove the rock from the bed of Wood river. The
bottom of the channel or river at the upper point
of the horseshoe was from 20 to 22 feet. The plans
and specifications as testified to by the engineer of
appellee district disclosed that the channel of said
cut-off was to be cut to a depth of within 6 feet of
the bottom of the channel of Wood river. In other
words, the new channel or "cut-off" was not to be
excavated to as great depth as the river at the point
where the "cut-off" began, by about 6 feet. The
evidence further discloses that before the new chan-
nel had been completed, according to the plans and
specifications as testified to by the engineer, Mulville
Brothers or their subcontractors, under the supervi-
sion of the engineer of said district and according
to the plans and specifications of said district, as
testified to by said engineer, constructed a dam across
the channel of Wood river at the upper end of the
horseshoe. Said dam was constructed to the full
height of the embankment; in other words, to the
height of 20 to 22 feet. At the time the dam was
put in, the evidence discloses that the new channel
had not been cut as deep as the specifications required.
We quote from the testimony of the engineer with
reference to this work as given in the abstract at
page 12: "As engineer of the district, I laid out
the construction of the dam embankment and gave
stakes, and told the contractor where to place it. It
was constructed under contract with the Wood River
Drainage and Levee District. I had charge of the
work there, and in the course of my duties, as en-
gineer of the district, I staked out the dam and had
general supervision of that work, the same as any
other work. The construction of the dam started about

October 10th. At the time the embankment was built the new channel across the points of the elbow or horseshoe in the river was of various depths, from ten to possibly twelve feet. Where it had the least depth wasn't more than about eight feet. The purpose of the embankment or dam was to turn the water; make it flow through the new channel. * * * The grade of the new channel was not contemplated to go only down about—to be six feet above the bottom of the old channel; the bottom part of the work was in very wet material, but the specifications called for it to be about—well, about six feet above the bottom of the old channel.''

The evidence discloses that the bottom of the channel where the dam was constructed was about 6 or 7 feet lower than the bottom of the channel at Milton bridge where the rock was being excavated. Immediately after the construction of the dam on October 10, 1918, water above it began to rise and continued to rise daily until about October 24, when augmented by rains, accumulated in such volumes that it washed out the dam and opened the old channel at that point to its former depth.

The record further discloses that by October 14 the water had risen to such a height at Milton bridge as to overflow appellant's machinery and stop its work, and the entire work remained blocked until October 29. From October 25 to 29, appellant was engaged in clearing its machinery and rock of the mud which had been deposited by the high water. From October 29 appellant continued to work until November 20, when the dam by direction of the district was rebuilt at the same place as before and under the same conditions. The waters immediately began to rise and by November 23 were 2 or 3 feet over appellant's machinery. Appellant was compelled to suspend its work and did not resume operations until November 26. On November 26, by reason of

the backing up of the water and additional rainfall, the dam again went out. . Appellant resumed its work on November 26 and continued to work until January 18, when the work was completed.

There is no contention on the part of appellee that appellant was not delayed in the work by reason of the waters being backed up and overflowing its machinery and the rock it was excavating, but the contention is that by virtue of the provisions of the contract entered into between it and appellant that appellant was not entitled to recover for any damage on account thereof, and for the further reason that it is contended appellant knew of the contemplated building of said dam and being so advised must be held to have contracted in view thereof and that, having done so, it cannot recover. On appellant's part, it is contended that the backing up of the waters referred to in the contract was the backing of waters from the Mississippi river and not a backing of the waters caused by the construction or said dam, and it is also contended by appellant that even though it knew that the work of the district contemplated the building of said dam, that appellee had no right as against appellant to construct the dam in question until the new channel or cut-off had been excavated to the depth and width the specifications required it should be excavated. In other words, that the channel to be constructed under the plans and specifications should first be constructed according to said plans and specifications before the dam was built. The reading of the contract would indicate that the backing of the waters referred to was the backing of the waters from the Mississippi river, but the evidence does not show that any water backed from the Mississippi river. In fact, it shows to the contrary. We are of the opinion, and so hold, that said dam should not have been constructed as against appellant until the new channel had been excavated, widened and deepened as pro-

vided in the plans and specifications, and that appellee having seen fit to construct or have constructed said dam before the excavation of said channel had been completed, appellant would have a right of action for the damages that it might suffer by reason thereof.

It is next contended by appellee that even though it be conceded appellant has a right of action for the damages suffered by reason of the backing of the waters as above mentioned, that its right of action would not be against the drainage district but would be against Mulville Brothers, it being contended that the Mulville Brothers were independent contractors and that the district was not liable for their work. We hold, however, that appellee cannot escape liability on this ground, for the evidence tends to show that the dam in question was constructed according to the plans and specifications furnished by appellee and under the direct supervision of its engineer. Said direction extended to the matter of the building of the dam when it was originally constructed on October 10, 1918, and on its being reconstructed on November 20, 1918, at both of which times said cut-off had not been constructed according to the plans and specifications. This being true, the drainage district would be liable.

In *Nicholson v. Inlet Swamp Drain. Dist.*, 280 Ill., page 366, the court at page 370 says: "It is apparent from the testimony that while the ditch was being constructed and the dam maintained below the Aschenbrenner tract, sand and silt were washed down the ditch and deposited along the plaintiffs' lands, particularly along the Aschenbrenner tract. This also was dredged out, and it was this extra material, caused by the caving in of the banks and the washing down of sand and silt, that spread over the lands of plaintiffs and caused the greater part of the damage. There was some rock formation along the Aschenbrenner tract, and it appears that although the sides of the spoil-banks were as steep as they could be

482    Appellate Courts of Illinois.

Myers Construction Co. v. Wood River D. & L. Dist., 221 Ill. App. 473.

built, this material also extended beyond the additional right of way obtained by the district.

"While the defendant relies upon the rule that the contractee is not liable for an injury which results from the wrong or negligent manner in which work is done by an independent contractor, it concedes that there are a number of exceptions to this rule, and that one of them is, that where the injury is due to the contractee's defective plans or methods pursuant to which the work was done, such methods being furnished and directed by the contractee, the contractee is liable. In attempting to show that this case does not come within that exception it contends that the damage complained of resulted from the method of doing the work by the contractor; that sufficient right of way was furnished the contractor, and that proper and sufficient plans for the construction of the work without injury to others were provided by a competent engineer. While the testimony is somewhat conflicting as to whether these plans and specifications were proper where the excavation was to be made through earth, there is convincing proof in the record that in excavating through such material as was found along this ditch, with the slope of the sides of the ditch as specified, there was great danger and probability that the sides of the ditch would cave in—and this especially when the enormous weight of the spoilbanks and the action of the water on the banks or sides of the ditch are taken into consideration. The court was justified in entering judgments against the defendant upon the ground that the work was done in accordance with the plans and specifications and that such plans and specifications were defective in not making allowances for the probability of the caving in of the banks of the ditch and the deposit of silt and sand in the bottom during the progress of its construction. * * * The engineer for the defendant further testified that as the work progressed

he and the commissioners considered, on the whole, that it was being done in a skilful, workmanlike and scientific manner by the construction company." See also *Ringering v. Wood River Drainage & Levee Dist* , 212 Ill. App. 170.

That it was a negligent and unwarranted procedure to erect a dam across Wood river as was done. in this case without giving the waters a proper outlet was abundantly shown by the fact that the dam was twice washed out, and that, very soon after it had been constructed.

It was argued by counsel for appellee that the overflow of the rock to be excavated and the overflow of appellant's machinery was caused by the heavy rains. The evidence, however, is to the effect that almost immediately after the dam went out on each occasion appellant was able to begin work, so we take it that the evidence is pretty conclusive to the effect that it was the dam that caused the overflow rather than the heavy rains. The court in our opinion, and we so hold, erred in taking the case from the jury.

It was also contended by appellant that the court erred in rejecting the offer of the testimony tending to show the damages suffered by appellant. The measure of damages sought to be proven by appellant was the rental value of its machinery, and the damages incident to tying up of the men employed by appellant in the work of excavating said rock. We are of the opinion that the theory of appellant with reference to the measure of damages is the proper one as disclosed by the following authorities: *Benton v. J. A. Fay & Co.,* 64 Ill. 417; *Priestly v. Northern Indiana & C. R. Co.,* 26 Ill. 207; *Consumers' Pure Ice Co. v. Jenkins,* 58 Ill. App. 519.

It is further contended by appellant that the court erred in refusing to allow its offer of testimony to the effect that appellant, on the waters being backed up on the rock and over appellant's machinery by the

construction of said dam, stated to the engineer of appellee that it contemplated throwing down the job and that the engineer insisted that it stay on the work and that whatever damages it suffered would be taken care of by the drainage district. We are of the opinion that the court correctly sustained objections to this proof so far as the engineer undertook to bind the district to pay damages, but we do think that the proof was admissible to show notice of the effect of the construction of said dam as to the overflowing of the rock where appellant was excavating and of the delay that was being caused appellant in the prosecution of said work. The record discloses that during part of the time when appellant was compelled to suspend work on account of said overflow, certain of the teams of appellant were used by appellee on other work of the district, but proper credit was being given therefor.

For the reasons above set forth the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*