People of State of Illinois ex rel. G. S. Hepburn, Highway Commissioner of Sidell Township, Vermilion County, Appellee, v. Clarence C. Maddox et al., Drainage Commissioners, Appellants.

Gen. No. 9,685.

Opinion filed March 3, 1950. Released for publication March 29, 1950.

HUTTON, CLARK & HUTTON, of Danville, for appellants.

MANN, STIFLER & SNYDER and BOOKWALTER, CARTER & GUNN, all of Danville, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

G. S. Hepburn, the highway commissioner of Sidell Township, Vermilion county, plaintiff appellee, sought a writ of mandamus against defendant appellants, three drainage commissioners of the Little Vermilion Outlet Drainage District, Vermilion county, and the district itself, in the circuit court of Vermilion county. Upon the hearing before the court sitting without jury it appeared that appellant drainage district had been organized under the Levee and Drainage Act (ch. 42, Ill. Rev. Stat., par. 1 *et seq.* [Jones Ill. Stats. Ann. 42.006 *et seq.*]). The drainage district serves approximately 23,000 acres and for an outlet ditch has a natural stream called the Little Vermilion. The appellant commissioners of the drainage district, wishing to deepen, clean, and widen the Little Vermilion, first engaged Wilson and Anderson, a firm of engineers, to draw the plans and specifications and then entered into a contract with the Green Company, an independent contractor, to do the work, after having secured the approval of the county court for their plans of the project as provided in the above statute.

The Green Company commenced work on the contract, deepening the Little Vermilion until reaching a point approximately 260 to 300 feet to the east of the

36

place where a public highway in the care of plaintiff appellee Hepburn crossed the stream by means of a bridge. The bridge was constructed of steel and wood with stone abutments with no appearance of failure prior to the events of which plaintiff appellee complains.

The contractor stopped work at this point on March 18, 1948, due to high water and heavy rains. In the vicinity of the bridge mentioned the Little Vermilion flows in an arc, curving from the southwest of the bridge to the northeast and then proceeds in a generally easterly direction to the point where the work by the Green Company had stopped.

The rains caused the stream to rise. The waters funneled against the north pier of the bridge, eroded the fill behind the north abutment and from that point went east to the beginning of the recently excavated deeper stream bed where work had halted. Here there was a lip where the excavation had ceased and a waterfall developed, eroded the lip of this excavation and worked upstream toward the west under the bridge. In a few days the lateral and subjacent support of the north pier had been seriously damaged. On March 22, 1948, the north pier of the bridge and the bridge itself collapsed.

Plaintiff appellee brought this proceeding for a writ of mandamus directed to the defendant appellants, commanding them, the drainage district and commissioners, forthwith to restore the highway and bridge to a condition which would make it fit for public use as a highway and safe to accommodate public travel in as good a condition as before the appellants damaged the same by said drainage improvements, and that in the event the appellants had insufficient funds to perform the required work, that they be immediately commanded and required to raise such funds by additional assessments and levy or otherwise as permitted by

37

law to perform said work. The decision of the court below was in favor of the appellee highway commissioner, and a peremptory writ of mandamus issued. This appeal resulted.

Appellant drainage commissioners and drainage district cite two errors relied upon by them for reversal of the decision. Appellants' first contention is that since Green Company was an independent contractor, appellants are not liable for the damage to plaintiff appellee's bridge.

■ A drainage district is not liable for damage occasioned by the negligence of an independent contractor in the execution of a contract with the district; *Zuidema v. Sanitary Dist. of Chicago*, 223 Ill. App. 138, 145, and cases cited. One of the exceptions to this rule of law is that where the injury is due to the contractees' defective plans, pursuant to which the work is done, the contractee is liable. *Myers Const. Co. v. Wood River Drainage & Levee Dist.*, 221 Ill. App. 473, and *Ringering v. Wood River Drainage & Levee Dist.*, 212 Ill. App. 170. Since the preponderance of the evidence is that the Green Company, contractor to appellants, was an independent contractor, the dispute to be resolved is whether the plans and specifications for the deepening of the Little Vermilion were or were not defective.

The contract between appellants and the Green Company incorporates by reference the report of the drainage commissioners, the engineers' report which the commissioners made a part of their report, and the plans, plats, profiles and specifications and exhibits attached to the report of said commissioners. The specifications provided that existing structures be safeguarded by stipulating that the contractor be required to perform the dredging work with machines traveling on the banks only and distributing spoiled material approximately equal in volume on each side of the bank throughout the entire length of the Little Ver-

milion except in specific locations where necessary to avoid damages to public highways and railroads. The specifications further provided that the contractor was "to protect public bridges, and tile and pipe outlets into the open ditch." Beyond these two provisions, there is no evidence of any provision in the contract or in the documents that were incorporated therein for the protection of bridges, including the one in question. The report of the drainage commissioners, to the county court, in fact stated that "it does not appear likely that the foundation of any of the railroad or highway bridges would be affected." There was evidence that the drainage district and its commissioners failed to plan the ditching so as to control the direction or the channel location of the water flowing underneath the bridge, failed to anticipate the large volume of water naturally present in such a watercourse in the early months of spring and its affect on partially completed ditching, and failed to investigate or to show the depth of the abutments or piers on the bridge in question despite the fact the planned bed of the ditch as excavated proved to be below the base of the bridge abutments.

██ Appellants, in their brief and argument, stress the competency of their engineers. It is true that if injury results from work done by an independent contractor in accordance with defective plans and specifications furnished by the contractee, the latter is liable for the injury, *except* where the contractee employed a competent and skilful architect or engineer to furnish the plans and specifications, or used ordinary care in selecting an architect or engineer for this purpose, and did not know of and by ordinary care could not have known of, the defects in the plans and specifications. 57 C. J. S. 358.

Wilson and Anderson made up the plans and specifications for the drainage commissioners and the drainage district. Their competency is not questioned. The

defendant commissioners left it to these engineers as to the depth of the piers or abutments. There is no evidence in the entire record that the depth of the piers or abutments were ever on the plans or specifications. Rossman, plaintiff's predecessor in office as highway commissioner, told Hooker, one of the defendant drainage commissioners that the bridge would fall down because the footing was not deep enough. The drainage commissioners nevertheless went ahead with the plans as prepared by Wilson and Anderson. Thus there was evidence that though skilful engineers were employed, the defendant drainage commissioners did know and by the exercise of ordinary care could have known of the defects in the plans and specifications that caused the injury complained of.

██  In these circumstances, with little or nothing in the way of plans or specifications to guide the contractor in the protection of the bridge, the damage was wrought. Defendant appellants now seek to avoid their oversight by asserting that the plans for the ditching have not been proved defective. The evidence demonstrates otherwise and is sufficient to support the judgment below. The decision of the trial court, not being manifestly against the weight of the evidence, will not be set aside by this court. *Andrews v. Matthewson,* 332 Ill. App. 325.

██  The defendant appellants assert as a second major ground for reversal that in view of the principles of dominant and servient estates it was error for the trial court to hold for plaintiff appellee. Appellants point out that they must be considered the servient landowner in this case and that for the damage caused by the excavation being deepened by the stream then they cannot be held liable. With this contention we do not agree. Appellants cite *Young v. Cleveland, C., C. & St. L. R. Co.,* 203 Ill. App. 39. In that case the adjoining landowner sued the railroad company for

damage to his land. It appeared that the landowner was the dominant party, the railroad the owner of the servient estate. The railroad excavated a ditch at the foot of a hill on the landowner's property and about twelve feet distant from the boundary line. The landowner sued on the theory that his lateral support had been removed by the railroad. Unlike the present case, the court in the *Young* case stated that the evidence failed to show or tend to show that there was any caving in of the dominant estate by virtue of said excavation alone. In this case, there was evidence of such nature. The erosion and gullying causing the damage in the *Young* case may be distinguished from the consequences of a deliberate lowering of the bed of the stream as in the case before us and the consequent withdrawal of subjacent and lateral support immediately adjacent to the bridge in question. As the court in the *Young* case, *supra*, stated at pp. 43 and 44, quoting the leading case of *Pohlman v. Chicago, M. & St. P. R. Co.*, 131 Iowa 89:

"It (the doctrine of lateral support) goes no further than to inveigh against an interference within the zone of the natural support afforded by the soil conditions at the boundary line. Manifestly, then, we cannot concur in the view that the case before us is a proper one for the application of the doctrine. It is no part of the contention presented by the petition that the ditch constructed by defendant extended to or near the boundary line, or that plaintiff's soil at the boundary line in respect of its lateral support had been in any manner disturbed . . . ."

In the instant case such withdrawal of support (*in consequence of the acts of the defendants*) occurred immediately below and beside the bridge in question causing it to fall into the stream.

In *People v. Block*, 276 Ill. 286, at p. 292, it was stated that: "The right of the owner of a dominant heritage

41

by ditches and drains to collect the surface water falling on his estate and discharge it into a natural water channel, even if the quantity of water cast upon a servient estate is thereby increased, is not involved. The existence of such right does not give the landowner the right to enter upon and cut through a highway without incurring any liability and impose upon the town the obligation to repair it.''

To the same effect is *People v. Hedges*, 289 Ill. 378. That both the *Hedges* and the *Block* cases involved the deliberate destruction of the bridges, upon which appellants seek to distinguish them from this case, is without weight. The duty of appellant to avoid injury to bridges and highways being clear, a breach of that duty resulting in damage to appellee is actionable, whether the breach itself be deliberate or negligent.

There being no other error in the record, the judgment of the circuit court of Vermilion county is affirmed.

*Judgment affirmed.*