Thomas J. Guthrie, Plaintiff-Appellee, v. Allan Van Hyfte, Defendant-Appellant.

Gen. No. 65–18.

Third District.

November 15, 1965.

Barash & Stoerzbach, of Galesburg, for appellant.

Bozeman, Neighbour, Patton & Henss, of Moline (Donald A. Henss, of counsel), for appellee.

STOUDER, J.

Allan Van Hyfte, Appellant herein, claiming to be a passenger in a car driven by Thomas Guthrie, Appellee herein, brought an action against Thomas Guthrie to recover damages caused by the alleged negligence of Appellee. Appellee, Guthrie, claiming that Van Hyfte was the driver and Guthrie the passenger, brought an action

against Van Hyfte for damages occasioned by the alleged negligence of Van Hyfte. The two actions were consolidated for trial. The jury rendered a verdict for Appellee in the amount of $35,000 and against Appellant in both actions. Judgments were entered on the verdicts and from the judgment in favor of Appellee, this appeal is taken.

The undisputed evidence shows that on the evening of June 29, 1963, Van Hyfte, then 17 years of age, and Guthrie then 20 years of age, drove in Appellee's car to Davenport, Iowa from Kewanee, Illinois with two girls. Prior to leaving Kewanee, Appellee had purchased two six packs of beer which were consumed during the trip. In Davenport Appellee purchased two more six packs of beer. The group drove around for a short time and returned to Kewanee. The trip from Kewanee to Davenport and back took place between 7:00 p. m. and 11:00 p. m. during which period 19 cans of beer were consumed, 7 or 8 of them by Appellee by his own testimony. Upon the return to Kewanee the group went into the MOC Club where they remained for about an hour. Guthrie and Van Hyfte then left the club leaving the girls there. Up to this point both parties agree that Guthrie was driving his own car which was a new, 1963 Chevrolet Impala with an oversize engine and 4 speed transmission. After leaving the club Guthrie and Van Hyfte conversed with two other boys for 15 or 20 minutes. The testimony of these other boys fixes the termination of this conversation at no later than 1:00 a. m. and probably 5 or 10 minutes earlier. Guthrie and Van Hyfte then drove off with Van Hyfte driving.

From this point there is a sharp conflict in the testimony. Van Hyfte testified that they drove around Kewanee for about 20 minutes with Van Hyfte at the wheel, that they then returned to the MOC Club where there was a tight parking place in front of the club. Van Hyfte, fearing that he might scratch the car asked

305

Guthrie to park it which he did. After remaining there for approximately 30 minutes they learned that the girls were going to ride home with someone else and the boys left with Guthrie driving. As they turned the corner at Third and Main the tires squealed and they proceeded north on Route 78 out of town. Before they were out of town a spotlight was shown on the car, Van Hyfte said it was the police and Guthrie accelerated. As they kept going faster Van Hyfte shouted to slow down because there was a curve ahead. At 1:30 a. m. they hit a cement abutment on the left side of a curve about a mile and a half north of Kewanee going about 100 miles an hour. Van Hyfte flew across the console and fell out of the car on the driver's side.

Guthrie testified that after leaving the MOC Club at about 12:45 a. m. they drove across the street to talk with the two boys before mentioned. There Van Hyfte took the wheel. Guthrie states this to be probably 5 or 10 minutes after 1:00 a. m. They then drove to Third and Main street where Guthrie looked for his cigarette lighter and then turned north with the tires squealing. When the spotlight was noticed, Van Hyfte said it was the police and that there was beer in the car. Guthrie told Van Hyfte to stop and let him, Guthrie, drive and Van Hyfte said there wasn't time and he was afraid of what his father might say if they were caught drinking. Guthrie again asked for the wheel when the car accelerated and told Van Hyfte to slow down before they reached the curve. After the impact Guthrie recalled an exchange of conversation between himself and Van Hyfte, that Van Hyfte asked what they were going to do and that Guthrie answered, "Don't worry about it. I will take care of everything." Van Hyfte also recalled that there was some conversation after the accident.

After the accident Guthrie admits having told several people that he was driving at the time of the accident. These people testified at the trial, among them the officer

investigating the accident who testified that Guthrie told him, both immediately after the accident and later at the hospital that he was driving. Both boys were seriously and permanently injured.

Appellant argues (1) assuming Van Hyfte to be the driver and Guthrie the owner-passenger, any negligence of Van Hyfte is chargeable to Guthrie and the trial court should have directed a verdict for Van Hyfte or granted his post-trial motions or judgment notwithstanding the verdict or for a new trial; and (2) the verdict and judgment are against the manifest weight of the evidence and the trial court should have granted the motion for a new trial. Appellant relies heavily on Palmer v. Miller 380 Ill 256, 43 NE2d 973, and Staken v. Shanle 23 Ill App2d 269, 162 NE2d 204. Appellee also relies on Palmer v. Miller, supra in support of his contention that the misconduct of a driver cannot be imputed to the owner-passenger.

We do not believe these cases to be controlling in the instant case on the question of imputed negligence. Both cases involved actions by or against a third party. The Palmer case held that in such action the negligence of a driver is not imputed to the owner-passenger in the absence of a master-servant or principal-agent relationship, and the Staken case in re-emphasizing this principle adds to it that the owner-passenger may be chargeable with his own negligence if he fails in his duty to control the vehicle or the driver thereof. This admittedly gives the owner-passenger different duties and responsibilities with respect to the operation of his vehicle than one who is merely a passenger and it is this duty of control in the light of all of the facts and circumstances of this case which we believe to be of assistance.

In view of the sharp conflict in the evidence it is understandable that the parties have devoted much attention to the comparative weight of the evidence supporting identification of the driver of the vehicle. How-

ever, in our opinion, this question is immaterial. Attention should have been directed to the evidence supporting the essential allegations of Appellee's complaint. It is axiomatic that each element of Appellee's complaint must be supported by sufficient evidence. On Appellant's motion for a directed verdict, the unimpeached evidence of Appellee should have been accepted by the court as true, with a view to determining whether, under the most favorable interpretation and inference, such evidence supported Appellee's cause of action. (Rohr v. Cluver 20 Ill App2d 548, 156 NE2d 770 and cases cited therein.) One of the essential elements of Appellee's case was the allegation and proof of absence of his own willful and wanton misconduct contributing to his injuries, since no one should be permitted to profit from a wrong to which he contributed. (Prater v. Buell 336 Ill App 533, 84 NE2d 676; People v. Maddox 340 Ill App 10, 91 NE2d 107.) What evidence did Appellee produce in support of this element? An exhaustive perusal of the record discloses only Appellee's own statements which were clearly and admittedly impeached. Appellee admits that both parties were minors, that Appellee was the owner of the vehicle, that he consciously and deliberately participated in the purchase and consumption of substantial quantities of beer during a period preceding the accident, that at one time Appellant took the wheel because he was in "better shape" than Appellee. Appellee admits further that the vehicle came to the attention of the police because of the manner in which it was being operated immediately preceding the accident and that the presence of beer in the automobile together with all of the above facts, resulted in a high speed flight from the police culminating in the accident which produced Appellee's injuries. Appellee then says that he ineffectually remonstrated with Appellant to stop the car while this flight was in progress. Appellee admittedly stated to many people at many different times that he was driving

the car at the time of the accident and testimony of these witnesses clearly and successfully impeached any testimony by Appellee concerning the identity of the driver. Impeachment of Appellee's testimony identifying the driver must also logically impeach any testimony concerning statements made to such driver. These statements are the only evidence offered by Appellee to prove his freedom from willful and wanton misconduct and his impeached testimony standing alone cannot suffice to support an essential element of his cause of action.

We must therefore conclude that the verdict of the jury was against the manifest weight of the evidence accordingly the judgment of the Circuit Court of Henry County is reversed and the Court is instructed to enter judgment for Appellant on his motion for judgment notwithstanding the verdict.

Reversed and remanded with directions.

ALLOY, P. J. and CORYN, J., concur.