JOHN BRADBURY *et al.* Appellants, *vs.* THE VANDALIA
LEVEE AND DRAINAGE DISTRICT, Appellee.

*Opinion filed October 26, 1908.*

1. PLEADING—*what is not ground for a special demurrer.* The
fact that a declaration in an action against a drainage district for
flooding plaintiff's lands alleges that the levee constructed by the
defendant caused the water to rise much higher than formerly on
the west side of the river and above the levee (which might in-
clude other lands than the plaintiff's) is not ground for a special
objection that the declaration charges that other lands than those
of the plaintiff have been damaged, where there is no averment of
damage except as to plaintiff's lands.

2. DRAINAGE—*right of drainage is governed by the law of na-
ture.* Under the rule of the civil law, which has been adopted in
Illinois, the right of drainage is governed by the law of nature,
and the lower proprietor cannot do anything to prevent the natu-
ral flow of surface water and cast it back upon the land above;
nor in Illinois is there any distinction between surface waters and
those flowing in a natural water-course.

3. SAME—*a drainage district is liable in damages for flooding
upper lands.* A levee drainage district organized for agricultural
purposes is liable in an action of trespass on the case for dam-
ages to the lands of an upper proprietor, which are flooded by rea-
son of the construction of the levee built by the district according
to the plan of drainage adopted for the benefit of the lands within
the district.

4. SAME—*a drainage district is not an involuntary quasi public
corporation.* While a drainage district is a *quasi* corporation, if
the statute under which it is organized does not make it a cor-
poration, and while it is not liable for the unauthorized acts of its
commissioners for which they are personally liable, yet it is not
an involuntary *quasi* public corporation, which is a mere political
or civil division of the State, and which is not liable in damages
for the negligent or wrongful acts of the officers or agents. (*El-
more* v. *Drainage Comrs.* 135 Ill. 269, and *Heffner* v. *Cass and
Morgan Counties,* 193 id. 439, explained and doctrine limited.)

5. SAME—*liability of drainage district is to be enforced by as-
sessment upon lands of district.* The liability of lands in a levee
drainage district, under section 2 of the Levee act of 1879, for
damages sustained by lands lying above the district by reason of
the construction of any levee, ditch or drain, is enforcible by an
action of trespass on the case against the district, and if damages
are recovered they are to be collected by an assessment upon lands
within the district.

6. SAME—*drainage district cannot take property without compensation.* A levee drainage district has the power of eminent domain for the purposes of its organization, but it is prohibited by the constitution from taking or damaging lands without making compensation therefor.

7. SAME—*only drainage referable to police power is for sanitary purposes.* The removal of large bodies of stagnant water, which produce malaria and breed disease, is within the police power of the State; but if a drainage district is organized for the benefit of the lands within the district for agricultural or mining purposes, it cannot escape liability for the flooding of upper lands by setting up the police power of the State to provide for sanitary drainage.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Fayette county; the Hon. A. M. ROSE, Judge, presiding.

BROWN & BURNSIDE, for appellants:

Independently of statutory enactment, a riparian proprietor has a right to recover damages for the building of a dam along the side of a river which causes the waters of the stream to overflow and damage his land. *Burwell v. Hobson,* 12 Gratt. 322; *Gerrish v. Clough,* 48 N. H. 9; *O'Connell v. Railway Co.* 87 Ga. 246; *Byrne v. Railway Co.* 38 Minn. 212; *Pinkstaff v. Steffy,* 216 Ill. 406.

A drainage district organized under the Levee act is a public corporation and has the power to exercise the right of eminent domain, and hence cannot damage private property without making just compensation. Such a district is public and has power to exercise the right of eminent domain. *Railway Co. v. Drainage District,* 213 Ill. 83; *Joliet v. Drainage District,* 222 id. 441; *Hutchins v. Drainage District,* 217 id. 561.

Private property cannot be taken or damaged for public use without just compensation. Const. 1870, art. 2, sec. 13.

The State itself cannot damage private property without first making compensation therefor. *People v. St. Louis,* 5 Gilm. 351.

A drainage district is a public corporation, and is limited in its rights to take or damage property in the same

way and to the same extent as any other public corporation. *Railroad Co.* v. *Drainage District,* 194 Ill. 310; *Juvinall* v. *Drainage District,* 204 id. 106; *Joliet* v. *Drainage District,* 222 id. 441; *Smith* v. *Drainage District,* 229 id. 155.

The State cannot authorize a corporation to do what it cannot do itself. *Railway Co.* v. *Stein,* 75 Ill. 41; *Ballance* v. *Peoria,* 180 id. 29.

By express statutory enactment a drainage district organized under the Levee act is liable for all damages to lands above the district which arise from the building of ditches or levees. Hurd's Stat. 1905, chap. 42, sec. 2.

B. W. HENRY, and ALBERT & MATHENY and GRAY, for appellee:

A *quasi* public corporation cannot be held liable in damages, at the suit of a person injured in person or property, by the tort or negligence of such corporation or for the wrongful acts or negligence of its officers. Such corporations can only act through its officers.

A drainage district is an involuntary *quasi* public corporation, and no action can be maintained against it for damages. 25 Cyc. 194; *Elmore* v. *Drainage Comrs.* 135 Ill. 269; *Heffner* v. *Cass and Morgan Counties,* 193 id. 428; *People* v. *Gray,* 196 id. 310; *Smith* v. *People,* 140 id. 355; *Drainage District* v. *Griffin,* 134 id. 330.

The State, by virtue of its police power, may direct the reclamation of swamp and overflow land by means of levees, and damages and injuries occasioned thereby are *damnum absque injuria.* *Green* v. *Swift,* 50 Cal. 536; *Railway Co.* v. *Chicago,* 140 Ill. 209.

Swamp and overflow lands have been set apart, as is shown by legislative intent manifested in the statutes, to be reclaimed by levees and drains. Hurd's Stat. 1905, p. 92; Laws of 1852, pp. 178, 181.

Leveeing swamp and overflow lands is a legal, and hence a proper, use of such lands, and damages resulting

to another from a proper use of one's own property is *damnum absque injuria.* 1 Cyc. 646, 647, and notes.

One land owner may levee against overflow waters of a river and prevent the same overflowing his lands without being liable in damages to another land owner because of increasing the overflow on such other lands. *McDaniel* v. *Cummings,* 83 Cal. 515; *Gray* v. *McWilliams,* 89 id. 157; *Edwards* v. *Railway Co.* 22 L. R. A. 246; *Lamb* v. *Reclamation District,* 73 Cal. 125; *Schlichter* v. *Phillipy,* 67 Ind. 201; *Benthall* v. *Seifert,* 77 id. 302; *Railroad Co.* v. *Hury,* 77 id. 364; *Railroad Co.* v. *Green,* 99 id. 205; *Ruthke* v. *Gardner,* 134 Mass. 14.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Fayette county sustained the demurrer of appellee, the Vandalia Levee and Drainage District, to the amended declaration of appellants, John Bradbury and Mary Bradbury, filed in this action of trespass on the case for damages to appellants' lands, resulting from the construction by appellee of a levee along the Kaskaskia river and across the bottom lands to the bluffs bordering on the same. Appellants stood by their declaration, whereupon judgment was rendered against them for costs, and on appeal to the Appellate Court for the Fourth District the judgment was affirmed. From the judgment of the Appellate Court this appeal was taken.

The declaration contains four counts, the first of which avers that the plaintiffs are the owners of and in possession of a tract of land containing about eighteen acres, on the west side of the Kaskaskia river, which flows in a southwesterly direction through the county of Fayette; that before the building of the levee by defendant the lands were not subject to overflow by the freshets or floods of said river and were valuable farming lands; that the defendant is a drainage district organized on or about September 9,

1902, under the act entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," in force May 29, 1879, (Laws of 1879, p. 120,) together with the amendments thereto; that the plan of the improvement, as fixed by the decree of the county court of said county, included the construction of a levee along the east side of the Kaskaskia river, beginning at the mouth of Lynn creek, about a quarter of a mile down the river from the plaintiffs' lands, and extending down the river about twelve miles, and also a levee from the mouth of said creek in an easterly direction to the bluffs; that during the summer of 1904 the defendant caused said levee to be erected about eight feet in height and four and one-half feet wide on top, with no outlet from the river into the lands lying on the east side; that at the time of floods and freshets said river overflows its banks and inundates a strip of land about two miles in width; that by reason of the construction of the levee the flood channel below the lands of plaintiffs is narrowed and in some places does not exceed three hundred feet; that by reason of the construction of the levee the waters of the river were caused to rise much higher on the west side of the river and above the levee, and to thereby overflow the plaintiffs' lands in time of freshets; that their lands were damaged and injured, the crops growing thereon were destroyed, the soil was washed away and the lands rendered unwholesome and unhealthy and depreciated in value, and that by reason of section 2 of said act under which the defendant was organized, it became liable to pay the plaintiffs their said damages. The third count is substantially the same as the first, and the second and fourth contain the same averments as the first respecting the plaintiffs' lands, the organization of the district and the effect of the levee as an obstruction to the flow of the waters, but they charge that the defendant

wrongfully caused the levee to be constructed, and that before the building of the levee the plaintiffs' lands were only overflowed in times of extreme floods, whereas since that time they are overflowed and damaged and rendered unwholesome in times of only moderate floods and freshets.

The demurrer is both general and special, and alleges as special ground of demurrer that the declaration charges that other lands besides those of the plaintiffs have been damaged. The declaration avers that the levee caused the waters of the river to rise much higher on the west side and above the levee, which might include lands not owned by the plaintiffs, but there is no averment of damage to any lands except those of the plaintiffs and no cause of action is stated or attempted to be stated as to any other lands. The lands of the plaintiffs are on the west side of the river above the levee, and the averments as to raising the water on that side and above the levee are only made in connection with those lands. The declaration is not obnoxious to the special ground stated.

The declaration states facts showing injury and damage to the plaintiffs' lands resulting from the act of the defendant in building the levee below them, and thereby obstructing the natural flow of the waters of Kaskaskia river in times of floods and freshets so as to hold the same back upon said lands, and the substantial question raised by the demurrer is whether the defendant is liable for such damage. If an individual owner of the land where the levee was constructed had done the same acts as the defendant he would be liable for the consequent damage. He would have no right to build a levee which would prevent the escape of the flood waters and thereby flood the lands of the plaintiffs. In *Stout* v. *McAdams*, 2 Scam. 67, the court said: "There can be no doubt that every flowing back or throwing water upon the land of another is such an act as entitles the individual injured to his action." That case arose from the obstruction of a natural water-course by a dam,

and the principle has been applied by this court alike to obstructions to the natural flow of surface waters and natural water-courses. (*Gillham* v. *Madison County Railroad Co.* 49 Ill. 484; *Gormley* v. *Sanford,* 52 id. 158; *Ohio and Mississippi Railway Co.* v. *Webb,* 142 id. 404; *Rock Island and Peoria Railway Co.* v. *Krapp,* 173 id. 219; *Pinkstaff* v. *Steffy,* 216 id. 406.) In *Gillham* v. *Madison County Railroad Co.* the doctrine of the civil law by which the owner of lower ground has no right to erect embankments whereby the natural flow of the water from the upper ground shall be stopped was adopted; and in *Gormley* v. *Sanford* it was held that there was no difference in principle whether the water comes from the clouds above or has fallen upon remote hills and comes thence in a running stream. The court said (p. 162) : "The cases asserting a different rule for surface waters and running streams furnish no satisfactory reason for the distinction. * * * The right of the owner of the superior heritage to drainage is based simply on the principle that nature has ordained such drainage, and it is but plain and natural justice that the individual ownership arising from social laws should be held in accordance with pre-existing laws and arrangements of nature. As water must flow and some rule in regard to it must be established where land is held under the artificial titles created by human law, there can clearly be no other rule at once so equitable and so easy of application as that which enforces natural laws." Again, in *Pinkstaff* v. *Steffy* it was considered that there could be no difference whether the water that submerged the land of Steffy came from the hills above the land or from the overflow of the stream along the same.

Under the rule of the civil law adopted by this court the right of drainage is governed by the law of nature, and the lower proprietor cannot do anything to prevent the natural flow of surface water and cast it back upon the land above; (30 Am. & Eng. Ency. of Law,—2d ed.—326;) and this

court recognizes no distinction between surface waters and those flowing in a natural water-course. In *Burwell* v. *Hobson,* 12 Gratt. (Va.) 322, it was contended that a riparian proprietor may lawfully protect his property from floods by erecting a dike or other obstruction on his own land though its necessary effect may be to turn the superabundant water on the land of his neighbor, but the court said: "Such a distinction between the ordinary and extraordinary flow of a stream is not laid down or recognized by any elementary writer nor in any adjudged case, so far as I have seen. The utmost extent to which the authorities seem to go in that direction is, that a riparian proprietor may erect any work in order to prevent his land being overflowed by any change of the natural state of the stream and to prevent its old course from being altered, (Angell on Water-courses, sec. 333,) but he has no right, for his greater convenience and benefit, to build anything which in times of ordinary flood will throw the water on the grounds of another proprietor so as to overflow and injure them."

The question in this case is whether an aggregation of land owners can, by voluntarily accepting the privileges conferred by the Levee act and organizing a drainage district, erect a levee which obstructs the natural flow of water and injures the land of another and the district incur no liability. It is contended that there is no such liability because the drainage district is an involuntary *quasi* public corporation, which is neither liable for its own torts or the wrongs or negligence of its officers. It is first to be observed that in this case it is not necessary to the maintenance of the action that the corporation or its officers should have been guilty of either wrong or negligence. The first and third counts aver that the scheme of the improvement as fixed by the decree of the county court included the construction of the levee, which was erected in acordance with said decree. Under those counts the damage resulted, not from negligence or improper construction,

but from the adoption of the plan of drainage to benefit the lands within the district; and in *Stout* v. *McAdams, supra,* which was an action on the case, it was held that although the act of one person may be in itself lawful, yet if in its consequences it necessarily damages the property of another, the party occasioning the damage is liable to make reparation commensurate to the injury he has caused. The defendant has power to exercise the right of eminent domain and to have the damage to lands occasioned by the construction of its works determined. Lands taken or damaged by a drainage district for its purposes are taken or damaged for a public use, and compensation must be made therefor. (*Wabash Railroad Co.* v. *Coon Run Drainage and Levee District,* 194 Ill. 310; *Juvinall* v. *Jamesburg Drainage District,* 204 id. 106.) If a drainage district actually takes land, compensation must be made before the land is appropriated, and if the district concedes that damage will result to lands such damages may be assessed under the law of eminent domain; but if the district does not concede, in the first instance, that damage will result, an action on the case is an appropriate remedy to determine the question whether lands will be damaged and to recover the damages. Under the constitution private property cannot be taken or damaged for a public use without just compensation, and this gives a right of action. The demurrer admits that plaintiffs' lands have been damaged for a public use and that the damage has not been ascertained or paid.

On the proposition that the defendant is an involuntary *quasi* public corporation and for that reason not liable to respond in damages for any of its acts, the case of *Elmore* v. *Drainage Comrs.* 135 Ill. 269, is relied upon. That was a suit by an owner of lands included in the district who had been assessed for draining his lands, and after the payment of his assessment the district, without his knowledge or consent, enlarged the boundaries and discharged so much water into the ditches on his land that the ditches would

not carry it, and also did the work so carelessly and negligently as to overflow and submerge his lands. There was a judgment against the plaintiff on a general demurrer, and the charge of the declaration was negligence in the construction of the drains and in connecting the drains and ditches of the added territory with the drains on plaintiff's lands without enlarging such drains sufficiently to carry off the increased volume of water. The substantial grounds of the decision were, that it would be presumed that the plaintiff was fully compensated in the original assessment for his lands taken for the ditch and all damages consequent upon its construction for the original purpose; that if by the enlargement of the district an additional burden of water was cast on his lands, the consequent damages should have been assessed by a jury and paid by the district, but that the damages claimed in the declaration were either caused by the wrongful act of the commissioners in discharging the new and additional waters upon the plaintiff's premises or occasioned by negligence or misconduct on their part for which the remedy must be against them personally. Under that decision the land owner was not bound to suffer the injury, but could have enjoined the district until his damages on account of the additional burden of water had been assessed and paid. The court held that the drainage district was not a private corporation, formed by voluntary agreement for private purposes, which was undoubtedly correct. It was also said that while drainage districts had been classed as municipal corporations in *Commissioners of Drainage District* v. *Kelsey*, 120 Ill. 482, and other cases, there were substantial grounds of distinction, and that they were to be regarded as mere public involuntary *quasi* corporations, and therefore not liable to respond in damages to an individual injured by the negligent or wrongful act of their officers, agents or servants. That doctrine was repeated in *Heffner* v. *Cass and Morgan Counties*, 193 Ill. 439, but it is quite evident that it needs some revision or

limitation. The ground of distinction between corporations which are liable for the negligent or wrongful act of their agents or servants and those which are not, is, that public involuntary *quasi* corporations are mere political or civil divisions of the State created by general laws to aid in the general administration of the government and are not so liable, while those which are liable have privileges conferred upon them at their request, which are a consideration for the duties imposed upon them. (*Kinnare* v. *City of Chicago,* 171 Ill. 332.) Neither the State, nor any part of it, is divided by the legislature into drainage districts, nor do they have public duties thrust upon them without their consent. The organization of a drainage district is for the sole and exclusive benefit of the territory within the district, (*Commissioners of Union Drainage District* v. *Highway Comrs.* 220 Ill. 176,) and the lands within the district are assessed to pay the whole costs on the theory that they alone are benefited. A drainage district can only be organized upon the petition of a majority of the owners of lands within the proposed district who shall have arrived at lawful age and who represent one-third of the area of the lands to be reclaimed or benefited, and the organization is not different, in principle, from the organization of cities, villages or towns under a general law, on a petition of a certain proportion of the legal voters within the territory. It is correct to say that a drainage district is a *quasi* corporation if the act under which it is organized does not make it a corporation in fact, but it is not created for political purposes or for the administration of civil government. Undoubtedly a drainage district is not liable for the unauthorized acts of its commissioners for which they are personally liable, but the district is clothed with the power of eminent domain for the purposes of its organization and is prohibited by the constitution from taking or damaging lands without making compensation therefor. If no means were furnished with which to pay such damages that fact

would furnish no authority for causing such damage, and the obvious result would be that acts causing damage to others could not be performed at all. That is not the case, however, as to this district. Section 2 of the act under which the defendant is organized, provides that lands embraced in drainage districts organized under it shall be liable for any and all damages which may be sustained by any lands lying above such drainage district by the construction of any levee, ditch or drain in such district under the act. The statute declares the liability and the law contemplates that it shall be enforced by an assessment upon the lands. No other kind of action could be brought to charge the lands in the district·with the damages to plaintiffs' lands than the one adopted here, and if damages should be recovered they are to be collected by assessment against the lands.

But it is further contended that the defendant is not liable because the injury resulted from the exercise of the police power of the State through the district, as a mere governmental agency. The removal of large bodies of stagnant water which produce malaria and breed disease is conducive to the health and welfare of the public and such removal is within the police power of the State, (*Green* v. *Swift,* 50 Cal. 536,) and there have been cases where the drainage of lands for that purpose was referred to the police power residing in the State. The basis for the law under which the defendant is organized, however, is found in section 31 of article 4 of the constitution, which provides that "the General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special as-

sessments upon the property benefited thereby." The act under which the defendant is organized provides for drainage for agricultural or sanitary or mining purposes, to be maintained by special assessment upon the property. benefited thereby. If the county court finds that the proposed drains, ditch or ditches, levee or other works, is or are necessary or will be useful for the drainage of the lands proposed to be drained thereby, for either agricultural or sanitary or mining purposes, the district is to be organized. It is not contended that any other than sanitary purposes come within the undefined limits of the police power, and districts formed under the act are not necessarily organized as a police regulation to drain lands which would be a menace to public health or a breeder of malaria and disease. So far as appears, this district, with its scheme for a levee, was organized for the purpose of improving the lands within the district for agricultural purposes, which is not an exercise of the police power, and it was organized upon the petition of a majority of the owners of lands in the belief that they would be benefited by the organization. To deny to the plaintiffs a recovery of the damages which they have suffered by the effort of the owners of lands within the district to benefit themselves would be against natural right and every sentiment of justice, and we find no sufficient reason for exempting the district from liability, whether the levee is regarded as a wrongful obstruction to the waters of the river or as a lawful one under the decree of the county court.

The circuit court erred in sustaining the demurrer and the Appellate Court erred in affirming the judgment. The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*