Lizzie Farrow, Defendant in Error, v. The Eldred Drainage and Levee District, Plaintiff in Error.

Gen. No. 8,444.

Heard in this court at the October term, 1931. ▉ Opinion filed November 9, 1932. Rehearing denied January 4, 1933.

BEAL B. SMITH, E. J. CÓYLE, F. A. WHITESIDE, GIL-LESPIE, BURKE & GILLESPIE and HUGH J. DOBBS, for plaintiff in error.

P. M. HAMILTON, A. B. JOHNSON and SUMNER & REARDON, for defendant in error.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case a writ of error is prosecuted to review a judgment of the circuit court of Greene county awarding the plaintiff in the case, Lizzie Farrow, the sum of $3,000 damages for alleged injury to crops, in certain years, upon the real estate of the plaintiff which is located adjacent to a levee and drainage ditch constructed and maintained by the defendant in the case, The Eldred Drainage and Levee District. The suit was brought jointly by the plaintiff and her husband, Adellis Farrow, to recover for injuries to the growing crop upon the real estate referred to. Later, during the progress of the trial of the case, Adellis Farrow, by leave of court, was withdrawn as a party plaintiff from the case and the case proceeded to trial with Lizzie Farrow as sole plaintiff. The declaration charges that Eldred Drainage and Levee District was duly organized as a corporation for the purpose of constructing drains and levees, and that while the

plaintiff with her husband were the owners of certain real estate, the drainage district did dig and open a ditch and construct a levee adjoining said real estate which was adjacent thereto, said ditch and levee running north and south along the western boundary of said real estate; and that the drainage district in constructing said ditch and levee caused the dirt taken from the ditch so constructed to be thrown upon the west side of said ditch, forming a levee on the west side of said ditch and leaving the said land of the plaintiff unprotected from water overflowing from said ditch so constructed.

The declaration further avers that prior to the time said ditch was so constructed by the said defendant as aforesaid, a certain natural watercourse known as Bushnell Creek flowed in a general southwesterly direction at a distance of about one and one-half miles south of the south boundary of said real estate, and the, said defendant in constructing its said ditch and levees as aforesaid wrongfully closed the channel of the aforesaid natural watercourse and caused the water therefrom to flow in a westerly and northerly direction through the said ditch so constructed along the western boundary of the said lands of the plaintiffs; that prior to the time said ditch and levee were constructed as aforesaid a certain natural watercourse known as Hurricane Creek flowed in a general southwesterly direction about one-half of a mile south of said south boundary line of the aforesaid lands of the plaintiffs, and the said defendant in constructing its said ditch and levees as aforesaid adjoining the said real estate of the plaintiffs on the west, wrongfully closed the channel of the aforesaid natural watercourse called Hurricane Creek and caused the water therefrom to flow north along and adjoining the west boundary of said real estate of the plaintiffs and through the said ditch so constructed; and that prior

to the time said ditch and levee were constructed as aforesaid a certain natural watercourse known as Schafer Creek flowed in a general westerly direction near the northern boundary of the aforesaid real estate of the plaintiffs, and the defendant in constructing its said ditch and levees as aforesaid adjoining the western boundary of the said real estate of the plaintiffs wrongfully closed the channel of the aforesaid natural watercourse called Schafer Creek and caused the water therefrom to flow north and through the ditch so constructed; that prior to the time said ditch and levee were constructed as aforesaid the said real estate of the plaintiffs drained to the south and west and that the surface water and rainfall draining from the real estate of the plaintiffs had an unobstructed flow and drained from the land of the plaintiffs to the west and southwest.

And the declaration avers that the defendant failed to dig said ditch adjoining the real estate of the plaintiffs of sufficient size, slope and capacity to carry off the water from the aforesaid natural watercourses together with the surface water naturally draining off the real estate of the plaintiffs during years of heavy rainfall, thereby causing said ditch intermittently and recurrently to overflow said real estate of said plaintiffs; and that by reason of the turning of said natural watercourses into said ditch, and also by reason of the said defendant failing to construct said ditch past the real estate of the plaintiffs of sufficient size, slope and capacity to carry off the water from said watercourses and the surface water naturally draining from the real estate of the plaintiffs into said ditch and by reason of placing the dirt from said ditch on the west side thereof instead of on the east side, thus leaving the real estate of the plaintiffs unprotected from said water, during the season of heavy rainfall in the year 1923 a part of the bank of said

ditch caved in and said ditch overflowed in the summer of 1923 and covered a part of said real estate of the plaintiffs on which they had certain crops of grain then and there growing; and the plaintiffs aver that as a result of said overflow from said ditch upon said land of the plaintiffs as aforesaid, the water greatly injured a large part of said crops and totally destroyed a large part of said crops, to the damage of the plaintiffs of $6,000, therefore they bring their suit, etc.

In the second count of the declaration, the plaintiffs' right of recovery is based upon the negligence of the drainage district in the maintenance of the ditch and the declaration charges that after the construction of the ditch that "it became and was the duty of the defendant to keep said ditch in repair and to keep it dredged and cleaned out and open and to prevent it from filling up and to keep said ditch in such repair, condition, size and capacity to carry off the waters from said Bushnell Creek, Hurricane Creek and Schafer Creek together with the surface water naturally draining off of the said real estate of said plaintiffs: Yet, the defendant did not regard its duty, but on the contrary wrongfully and negligently permitted said ditch to become and remain out of repair and did not keep said ditch in repair and open and in such condition, size and capacity to carry off said water and wrongfully and negligently allowed said ditch to fill up as aforesaid to such an extent that said ditch did not have sufficient size and capacity to carry off the said waters from said Bushnell Creek, Hurricane Creek and Schafer Creek together with the surface water naturally draining off of the said real estate of the plaintiffs; by reason of said defendant wrongfully failing and neglecting to keep said ditch in repair and open and dredged out and wrongfully allowing it to fill up, the water in said ditch, from the

aforesaid Creeks, and said surface water, overflowed in the summer of the year 1923 and said overflow waters covered a part of the said real estate of the plaintiffs on which they had certain crops of grain then and there growing, and the plaintiffs aver that as a result of said overflow from said ditch upon their said real estate the water greatly injured a large part of said crops and totally destroyed a large part of their said crops, to the damage of the plaintiffs of Six Thousand ($6,000) Dollars.''

The basis of recovery in the third, fifth, seventh and ninth counts of the declaration are the same, namely, improper construction of the ditch in question, and the fourth, sixth, eighth and tenth counts allege a right of recovery resulting from a failure of the drainage district to keep the ditch in proper repair and condition to carry the flow of the water.

All the counts in the declaration aver a right of recovery of damages from an overflow by the waters coming from the ditch in question which injured growing crops that were being raised on the land in question. A bill of particulars was filed with the declaration giving the number of acres of corn alleged to have been damaged and lost in the different years covered by the declaration, namely, 1923, 1924, 1925 and 1926; also the number of acres of corn and alfalfa claimed to have been lost or damaged in the year 1927; and averring that the damages occurred in September 1923, October 1924, September 1925, September 1926 and September 1927.

In defense, the drainage district filed the general issue and a number of special pleas. The court sustained a demurrer to the second, third, fourth, fifth, sixth, seventh, eighth and tenth special pleas. Error is assigned and argued in reference to the court's action in sustaining the demurrer to the second, eighth and tenth special pleas; and error is also assigned for

sustaining the demurrer to the fifth special plea alleging a former recovery.

The Eldred Drainage and Levee District, plaintiff in error herein, states its contention concerning the declaration and the action of the court in sustaining the demurrer to certain special pleas mentioned, as follows:

"This suit was instituted in the name of Lizzie Farrow and her husband, Adellis Farrow, as joint plaintiffs, and the declaration, consisting of ten counts, alleged that the plaintiff, Lizzie Farrow, was the owner in fee simple of the real estate in question, and that the plaintiff, Adellis Farrow, as her husband, resided with her upon said real estate and farmed the same, and that the crops grown thereon during all relevant times were owned jointly by said plaintiffs.

"The plaintiff, Adellis Farrow, was dismissed from the suit at the conclusion of all the evidence, but the allegations contained in the declaration respecting his joint ownership with his wife, of the crops alleged to have been damaged, were not stricken and the case went to the jury with those averments remaining in the declaration.

"The First Count of the declaration charged substantially, aside from the joint ownership of the crops, that the premises in question were situated outside of the territory of the Eldred Drainage and Levee District (Plaintiff in Error); that said district, prior to the first day of February, 1923, was organized as a corporation for the purpose of constructing drains and levees, and while the plaintiff was the owner of said real estate the defendant digged and opened a ditch and constructed a levee adjoining said real estate and adjacent thereto which ditch and levee ran North and South along the Western boundary of said real estate, and that the defendant in constructing said ditch and levee caused the dirt taken from it to be thrown upon

the West side of said ditch leaving the lands of the plaintiff unprotected from water overflowing therefrom; that prior to the construction of said ditch a certain natural watercourse known as Bushnell Creek flowed in a general Southwesterly direction at a distance of about one and one-half miles South of the Southern boundary of said real estate, and that the defendant in constructing its said ditch and levees closed the channel of the said natural watercourse and caused the water therefrom to flow in a Westerly and Northerly direction through the said ditch so constructed along the Western boundary of the plaintiff's lands; that prior to the construction of said ditch and levee a certain natural watercourse known as Hurricane Creek flowed in a general Southwesterly direction about one-half mile South of said South boundary lines of the plaintiff's lands, and the defendant in constructing its said ditch and levees adjoining the real estate of the plaintiff on the West closed the channel of the said natural watercourse called Hurricane Creek and caused the water therefrom to flow North along and adjoining the Western boundary of said real estate of the plaintiff and through the said ditch so constructed; that prior to the construction of said ditch and levee a certain natural watercourse known as Schafer Creek flowed in a general Westerly direction near the Northern boundary of said real estate of the plaintiff, and the defendant in constructing its said ditch and levees as aforesaid adjoining the Western boundary of said real estate closed the channel of the said natural watercourse called Schafer Creek and caused the water therefrom to flow North and through the ditch so constructed; that prior to the construction of said ditch and levee the plaintiff's real estate drained to the South and West and the surface water and rainfall drainage from it had an unobstructed flow and drained from the lands of the plaintiff to the West

and Southwest; that the defendant failed to dig said ditch adjoining the plaintiff's real estate of sufficient size, slope and capacity to carry off the water from the said natural watercourses, together with the surface water naturally draining off plaintiff's real estate during the years of heavy rainfall, thereby causing said ditch intermittently and recurrently to overflow said plaintiff's real estate, and that by reason of the turning of said natural watercourses into said ditch, and also by reason of the said defendant failing to construct said ditch past the plaintiff's real estate of sufficient size, slope and capacity to carry off the water from said watercourses and the surface water naturally draining from the plaintiff's real estate into said ditch and by reason of placing the dirt from said ditch on the West side thereof instead of on the East side, thus leaving plaintiff's real estate unprotected from said water during the season of heavy rainfall in the year 1923, a part of the bank of said ditch caved in and said ditch overflowed in the summer of 1923, and covered a part of plaintiff's real estate on which she had certain crops of grain then and there growing, and the plaintiff avers that as a result of said flow from said ditch upon her said land the water greatly injured a large part of said crops and totally destroyed a large part thereof to her damage in the sum of Six Thousand ($6,000.00) Dollars.

"The Second Count of said declaration similarly sets forth the ownership of said real estate and crops by the plaintiffs; the organization of said defendant for the purpose of constructing drains and levees; the digging and opening of a ditch and the constructing of a levee adjoining said real estate; the location of Bushnell, Hurricane and Schafer Creeks and the closing of their respective channels, and then said Second Count charges that in the year 1923, and each year thereafter, the banks of a part of said ditch con-

structed by the defendant caved in and said ditch thereby became out of repair and partly filled with sediment, clay, dirt, brush, driftwood, logs and willows which caused the water in said ditch intermittently and recurrently to overflow the said real estate of said plaintiff during heavy rainfalls; that it, thereupon, became and was the duty of said defendant to keep said ditch in repair and to keep it dredged and cleaned out and open and to prevent it from filling up and to keep it in such repair, condition, size and capacity to carry off the waters from the three creeks, together with the surface water naturally draining off said real estate, and that the defendant, disregarding its duty, negligently permitted said ditch to become and remain out of repair and did not keep the same in repair and open, and in such condition, size and capacity to carry off said water, and negligently allowed said ditch to fill up to such an extent that it did not have sufficient size and capacity to carry off the waters from the three creeks mentioned, together with the surface water naturally draining off plaintiff's real estate, and that by reason of the said defendant failing and neglecting to keep the ditch in repair and open and dredged out and by allowing it to fill up the water in said ditch from the said creeks and said surface water overflowed in the Summer of the year 1923, and said overflow waters covered a part of plaintiff's real estate on which she had certain crops of grain growing and as a result of said overflow upon said real estate the water greatly injured a large part of said crops and totally destroyed a large part of the same, all to the damage of the plaintiff.

"The Third, Fifth, Seventh and Ninth Counts of said declaration are in all respects the same as the First Count with the exception of allegations in each of them, respectively, covering damages to crops during the years 1924, 1925, 1926 and 1927. The Fourth,

Sixth, Eighth and Tenth Counts are in all respects the same as the Second Count with the exception of allegations of similar damages occurring, respectively, in the years 1924, 1925, 1926 and 1927.

"It should here be noted that the First and Alternate Counts of the declaration alleged damages arising out of the original construction of the ditch and levee, while the Second and Alternate Counts alleged damages arising out of the negligent failure of the plaintiff in error to maintain the ditch.

"The plaintiff in error filed a plea of not guilty to the several counts of the declaration and nine special pleas. A general demurrer was sustained to the Second, Fifth, Sixth, Seventh, Eighth and Tenth Special Pleas.

"*The Second plea was a plea of the Statute of Limitations,* alleging that the work done by the defendant complained of in the First and Third Counts of the declaration in the construction of the levees and the digging and opening of ditches and the changing of the natural watercourses of Bushnell, Hurricane and Schafer Creeks was a lawful and permanent improvement constructed by the defendant under due legal authority and in strict accordance with plans, profiles and specifications which had been approved by the County Court of Greene County, Illinois, at the time said Court entered an order organizing the defendant, as a Drainage District, and under the provisions of an Act of the General Assembly, entitled: 'An Act to Provide for the Construction, Reparation and Protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of Drainage Districts,' approved May 29, 1879; that said work was permanent in character, and that if any damage to the plaintiff's lands resulted from the digging and opening of said ditch, and the construction of said levees, and the diverting and changing of the waters of Bush-

nell Creek, Hurricane Creek and Schafer Creek, as alleged in said declaration, it occurred upon the completion of said work and the turning into said ditch of the natural watercourses above mentioned, and that the work of digging and opening said ditch, constructing said levees and diverting the waters of said creeks was all done by the defendant in the year 1910, and if any damage was occasioned thereby to any of the property alleged to be owned by the plaintiff it was caused and occasioned at the time said work was completed, and the waters from said creeks diverted and not since that time.

"The plea further sets out Section 16, of Chapter 83, of the Revised Statute, being the Statute of Limitations, limiting the time of recovery of damages for an injury to property, real or personal, and avers that the cause of action to plaintiff for the work done by said district occurred more than five (5) years before the commencement of said suit.

"*The Fifth plea was a plea of former recovery* alleging that the plaintiff had theretofore impleaded the defendant in the Circuit Court of Greene County at the February Term, 1920, in a certain plea of trespass on the case to the damage of the plaintiff of Twenty-Five Hundred ($2500.00) Dollars, for the very same wrongs and injuries as in said declaration mentioned, and such proceedings were, thereupon, had, that afterwards at the September term of said Circuit Court in the year 1921, by the consideration and judgment of the same Court the said plaintiff recovered against this defendant the sum of Five Hundred Seventy-Five ($575.00) Dollars for her damages, as well as the costs of the plaintiff in that behalf whereof the defendant was convicted, etc., and that said judgment was by the defendant afterwards fully paid and satisfied.

"*The Eighth plea* alleged the construction of the ditch, the building of the levee and the changing of the watercourse of said creeks in the year 1910, and

not since that time; that all of said work was a lawful permanent public work done in a lawful manner under due legal authority and permanent in character, and that said ditch so dug in 1910 has not become filled with sediment, clay, dirt, brush, driftwood, logs, and willows to any greater extent than it reasonably would have been expected to fill at the time said ditch was constructed, and that if any damage was occasioned to plaintiff's property by reason of said construction, or the reasonable filling of said ditch in a manner to be foreseen as aforesaid, that said damage was a permanent damage to the land of the plaintiff, and that said damage should have been recovered by the plaintiff against the defendant within five (5) years next after said ditch was opened, and this plea proceeds to pray the benefit of the Statute of Limitations.

"*The Ninth plea* alleged that the plaintiff, Lizzie Farrow, was not on the first day of February, 1923, or since that date, the owner of the premises described in the declaration. Issue was joined upon this plea.

"*The Tenth plea* to the first, third, seventh and ninth counts of the declaration alleged that the work done by the defendant in constructing said levee, digging and opening said ditch and changing the natural watercourse of Bushnell, Hurricane and Schafer Creeks was a lawful permanent improvement constructed by the defendant under due legal authority and in strict accordance with the plans, profiles and specifications which had been approved by the County Court of Greene County, Illinois, and was permanent in character, and that if any damage to the lands alleged to be owned by the said plaintiff resulted from the digging and opening of said ditch, the construction of said levee, the diverting and changing of the waters of said creeks, it occurred upon the completion of said work and the turning into said ditch of said natural watercourses above mentioned, which the defendant

avers was all done in the year 1910, and that the waters from said creeks overflowed said ditch in the year 1915, and thereby caused damage to the lands and crops of the plaintiff and that if plaintiff had a cause of action for digging said ditch and diverting said creeks and the overflow of said ditch, it occurred in the year 1915. The plea then quotes the Statute of Limitations as to the recovery of damages for an injury to real and personal property and invokes the benefit of that statute as against the action of the plaintiff.

"*It is the contention of the plaintiff in error that the trial court erred in sustaining demurrers to its second, eighth and tenth special pleas on the ground that the allegations therein contained properly show that the injury for which recovery is sought in the first and alternate counts of the declaration was a permanent injury, and that it occurred more than five years prior to the institution of the suit. It further contends that error was committed in sustaining the demurrer to its fifth special plea which properly alleges a former recovery for the same permanent injury for which plaintiff in error is again seeking to recover damages in this action.*"

The second special plea of the statute of limitations was pleaded as a matter of defense to the first and third counts of the declaration, which allege improper construction of the levees and ditches of the drainage district. The plea avers that the construction of the levees and digging of the ditches, was a *lawful and permanent improvement constructed by the drainage district under due legal authority* and in accordance with the plans, profiles and specifications which had been approved by the county court of Greene county, and under the act of the General Assembly, providing for the construction, reparation and protection of drainage ditches and levees across the lands of others

for agricultural, sanitary and mining purposes; and that said *work was permanent in character;* and that therefore if any damage to the land alleged to be owned by the plaintiff resulted from the digging and opening of the ditch referred to and the construction of the levee, in connection therewith, as averred in the declaration, that it occurred upon the completion of said work; and that the work of digging and opening said ditch and constructing the levee and diverting the water of the creeks mentioned, was all done by the defendant in the year 1910; and that therefore, under the statute of limitations, limiting the time of recovery of damages for an injury to real property, to five years after the cause of action has accrued; that the cause of action of the plaintiff for the work done by said district accrued more than five years before the commencing of this suit.

It is sufficient to say concerning this plea that it assumes that the declaration in the first and third counts is for recovery of damage permanent to the land involved. The declaration, however, and all the counts thereof, are for damage to the crops growing or grown upon the land in question adjacent to the drainage ditch and levee, for certain years specified, all of which are within the limitation of five years before the commencement of this suit. And the plea is based upon the assumption that the digging of the ditch and constructing the levee was a permanent structure. It is well settled that the digging of a ditch and the construction of an embankment or levee in connection therewith as averred in the declaration, is not a permanent structure within the contemplation of the law. *Chicago, P. & St. L. Ry. Co. v. Reuter,* 223 Ill. 387; *Ohio & M. Ry. Co. v. Thillman,* 143 Ill. 127; *Deterding v. Central Illinois Public Service Co.,* 231 Ill. App. 542. This court in the *Deterding* case above cited, pointed out, that "the unlawful obstruction of

a stream by a dam or embankment, however permanent in character, is never considered in law a permanent structure. And the permanent type or character of the structure cannot be availed of as a defense to an action brought by a party whose rights have been invaded to abate the nuisance created by the obstruction to the free flow of the water from the dominant heritage and nothing the owner of the servient heritage could do, even the building of a permanent dam, constructed of rock and concrete, could give the dam the character of a lawful permanent obstruction.''

It is also well settled that under the circumstances and conditions averred in the declaration, ''each overflow of the land of an adjoining owner caused by the negligent or improper construction of a railroad embankment is a fresh nuisance, and creates a new cause of action, and the railroad company is liable.'' *Chicago, P. & St. L. Ry. Co. v. Reuter, supra; Ohio & M. Ry. Co. v. Thillman, supra; Handfelder v. East Side Levee & Sanitary Dist.*, 194 Ill. App. 262; *Sanitary Dist. of Chicago v. Ray*, 199 Ill. 63.

''Where a structure though permanent and lawful is negligently or defectively constructed, it constitutes a continuing nuisance, and each injury occasioned by it creates a new cause of action, and successive recoveries may be had for the successive injuries caused by it.'' *Atherton v. East Side Levee & Sanitary Dist.*, 211 Ill. App. 55; *Drda v. Illinois Terminal R. Co.*, 210 Ill. App. 640; *Handfelder v. East Side Levee & Sanitary Dist.*, 194 Ill. App. 262.

It is also well settled that, ''it is the duty of a drainage district to keep its own natural watercourses open and free from obstruction, so none of the waters of the district will be forced upon the land of the adjoining district in times of flood.'' *Bay Bottoms Drainage Dist. v. Cache River Drainage Dist.*, 295 Ill. 301; *Bradbury v. Vandalia Levee & Drainage Dist.*, 236 Ill. 36.

The special plea referred to did not constitute a defense to the plaintiff's right of recovery, based upon the facts averred in the declaration.

The eighth and tenth special pleas which are also pleas of the statute of limitations are also legally insufficient for the reasons stated. The demurrer was therefore properly sustained to the pleas referred to.

It is contended also that the court erred in sustaining a demurrer to the drainage district's fifth special plea, which alleges a former recovery. This plea avers that the plaintiff in the action, Lizzie Farrow, had theretofore impleaded the drainage district in the circuit court of Greene county at the February term, 1920, in a plea to recover damages in the sum of $2,500 *for the very same wrong and injuries in the declaration mentioned* and that such proceedings were thereupon had; that afterwards at the September term of said circuit court in the year 1921 by the judgment of the same court the plaintiff recovered against the defendant the sum of $575 for her damages, as well as costs of suit; which judgment was thereafter paid and satisfied by the drainage district. It is apparent on the face of the plea that the wrongs and injuries sued for in this case, mentioned in the declaration, are not the same and did not accrue to the plaintiff until after the suit referred to in the plea had been instituted and adjudicated, and the judgment recovered by the plaintiff, satisfied, namely in the year 1921, and that the plaintiff could not therefore have recovered in that case any of the damages sued for in this case because her right of action did not accrue to the plaintiff until afterwards, namely, in the years 1923, 1924, 1925, 1926 and 1927. The demurrer to this plea was therefore properly sustained.

The point made, concerning the neglect to elimination of certain allegations concerning joint ownership of crops of Adellis Farrow with the plaintiff, after

the plaintiff became the sole plaintiff in the case, appears to be without merit, because the jury could not in any way have been affected in its deliberations by the matter suggested, inasmuch as the declaration did not go to the jury; and there is nothing in the record to show that this feature of the case was considered by the jury in any way.

It is assigned as error that the court refused to direct a verdict at the close of all the evidence. It is sufficient to say with reference to the motion to direct a verdict, that inasmuch as there was evidence tending to show a right of recovery and damages suffered by the plaintiff under some of the counts in the declaration, the motion to direct a verdict was properly denied.

The record does not disclose any error in the admission of evidence on the trial.

It is contended that the verdict is against the manifest weight of the evidence; and that the court therefore erred in denying the plaintiff in error a new trial. The evidence in the record discloses, however, that the jury in consideration of the evidence were fully warranted in their findings, both as to the plaintiff's right of recovery and as to the amount of damages assessed.

We are of opinion that the instructions which were given for the plaintiff are substantially correct statements of the law pertaining to the issues involved in the trial.

The record does not disclose any reversible error; and the judgment is therefore affirmed.

*Affirmed.*