John G. Eeingenburg, Appellee, v. Lincoln-Lansing
Drainage District et al., Defendants.
Appeal of Lincoln-Lansing Drainage District,
Appellant.

Gen. No. 41,499.

BURKE, J., dissenting.

Opinion filed April 23, 1941. Rehearing denied May 15, 1941.

ROBERT E. DOWNS, of Chicago, for appellant;
EDWARD T. HOWE, of Chicago, of counsel.

SIMON T. SUTTON, P. J. MCCARTHY and CHESTER D.
KERN, all of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion
of the court.

This is an appeal from a judgment for $3,500, en-
tered in the superior court against the Lincoln-Lansing
Drainage District, a body politic and corporate, upon
the verdict of a jury. The original suit was brought
against Lincoln-Lansing Drainage District, as a body

politic and corporate and Peter Bultema, Ben Ruiter and Otto F. Kalvelage, who were commissioners for the district, to recover damages alleged to have been sustained to plaintiff's crops when his land was overflowed, as a result of defective drainage. The jury returned a verdict against the Drainage District, assessed damages at $3,500, but rendered no verdict as to the three commissioners, the other defendants. It is from the judgment against the Lincoln-Lansing Drainage District that this appeal is brought.

On page 2 of appellant's brief, this statement is made:

''The defendant took this appeal from the judgment and from the order overruling motions for new trial. Motion for Judgment Notwithstanding Verdict and Motion in Arrest of Judgment. Since the defendant raises no issue of fact in this appeal a report of proceedings was not filed.''

In its assignment of errors, defendant states the following:

1. That the court erred in overruling defendant's motion for judgment notwithstanding the verdict.

2. The court erred in overruling defendant's motion to set aside the verdict and for a new trial.

3. The court erred in entering judgment against the defendant.

4. The court erred in overruling defendant's motion in arrest of judgment.

Plaintiff points out in his brief that the defendant-appellant has filed no report of the proceedings or certificate of evidence or a certificate of the trial judge stating that what is now set forth as an abstract of record is correct. Consequently, we have no way of knowing what took place at the trial.

The principal contention of defendant-appellant, so far as we have been able to gather, is that even though the acts of the defendant did cause the damage alleged by plaintiff, there could be no recovery. Right

to sue a drainage district for damages caused by it, has been passed upon many times by courts of this state.

In *Bradbury v. Vandalia Levee & Drainage District,* 236 Ill. 36, the court after discussing the Elmore case, said: "The court held that the drainage district was not a private corporation, formed by voluntary agreement for private purposes, which was undoubtedly correct. It was also said that while drainage districts had been classed as municipal corporations in *Commissioners of Drainage District v. Kelsey,* 120 Ill. 482, and other cases, there were substantial grounds of distinction, and that they were to be regarded as mere public involuntary *quasi* corporations, and therefore not liable to respond in damages to an individual injured by the negligent or wrongful act of their officers, agents or servants. That doctrine was repeated in *Heffner v. Cass and Morgan Counties,* 193 Ill. 439, but it is quite evident that it needs some revision or limitation. The ground of distinction between corporations which are liable for the negligent or wrongful act of their agents or servants and those which are not, is, that public involuntary *quasi* corporations are mere political or civil divisions of the State created by general laws to aid in the general administration of the government and are not so liable, while those which are liable have privileges conferred upon them at their request, which are a consideration for the duties imposed upon them. (*Kinnare v. City of Chicago,* 171 Ill. 332.) Neither the State, nor any part of it, is divided by the legislature into drainage districts, nor do they have public duties thrust upon them without their consent. The organization of a drainage district is for the sole and exclusive benefit of the territory within the district, (*Commissioners of Union Drainage District v. Highway Comrs.* 220 Ill. 176,) and the lands within the district are assessed to pay the whole costs on the theory that they alone are

benefited. A drainage district can only be organized upon the petition of a majority of the owners of lands within the proposed district who shall have arrived at lawful age and who represent one-third of the area of the lands to be reclaimed or benefited, and the organization is not different, in principle, from the organization of cities, villages or towns under a general law, on a petition of a certain proportion of the legal voters within the territory. It is correct to say that a drainage district is a *quasi* corporation if the act under which it is organized does not make it a corporation in fact, but it is not created for political purposes or for the administration of civil government.''

. . .

''So far as appears, this district, with its scheme for a levee, was organized for the purpose of improving the lands within the district for agricultural purposes, which is not an exercise of the police power, and it was organized upon the petition of a majority of the owners of lands in the belief that they would be benefited by the organization. To deny to the plaintiffs a recovery of the damages which they have suffered by the effort of the owners of lands within the district to benefit themselves would be against natural right and every sentiment of justice, and we find no sufficient reason for exempting the district from liability, whether the levee is regarded as a wrongful obstruction to the waters of the river or as a lawful one under the decree of the county court.''

In the case of *Lindstrom v. City of Chicago,* 331 Ill. 144, which involved a school district maintained by the city, a demurrer was sustained to the complaint and the cause dismissed. In dismissing the cause the court said at page 148:

''In *People v. Board of Education,* 255 Ill. 568, and *Bradbury v. Vandalia Drainage District,* 236 id. 36, the distinction between corporations liable for negli-

gent or wrongful acts of their agents and those which are not is made clear. The latter, being public involuntary *quasi* corporations, which are mere political or civil divisions of the State created by general law to aid in the general administration of the government, are not so liable, while those which are liable are so liable because they have privileges conferred upon them at their request, which are a consideration for the duties imposed. To the same effect is *Johnston v. City of Chicago,* 258 Ill. 494.''

In *Farrow v. Eldred Drainage & Levee District,* 268 Ill. App. 432, plaintiff recovered a judgment against the Drainage District for damages in the sum of $3,000 for alleged injury to crops upon the real estate of the plaintiff located adjacent to a levee and drainage ditch constructed and maintained by the defendant. In affirming the judgment below the Third District Appellate Court said at page 447:

''It is also well settled that under the circumstances and conditions averred in the declaration, 'each overflow of the land of an adjoining owner caused by the negligent or improper construction of a railroad embankment is a fresh nuisance, and creates a new cause of action, and the railroad company is liable.' *Chicago, P. & St. L. Ry. Co. v. Reuter, supra; Ohio & M. Ry. Co. v. Thillman, supra; Handfelder v. East Side Levee & Sanitary Dist.,* 194 Ill. App. 262; *Sanitary District of Chicago v. Ray,* 199 Ill. 63.

. . .

*Atherton v. East Side Levee & Sanitary Dist.,* 211 Ill. App. 55; *Drda v. Illinois Terminal R. Co.,* 210 Ill. App. 640. . . .

''It is also well settled that, 'it is the duty of a drainage district to keep its own natural water courses open and free from obstruction, so none of the waters of the district will be forced upon the land of the adjoining district in times of flood.' *Bay Bottoms Drainage Dist. v. Cache River Drainage Dist.,* 295

Ill. 301; *Bradbury v. Vandalia Levee & Drainage Dist.,* 236 Ill. 36.''

In *Bates v. Drainage Commissioners,* 273 Ill. App. 335, the complaint consisted of only one count claiming damages for the negligent burning and destroying of appellant's property in the maintenance of a drainage ditch. The defendant filed a pleading of not guilty and the trial was had before a jury. At the close of plaintiff's case the court on motion directed a verdict in favor of the Drainage District which was returned by the jury. A motion for a new trial was overruled and from a judgment against him in bar the plaintiff appealed. The Appellate Court in reversing the judgment and remanding the cause for a new trial held that as a Drainage District was not acting in a ministerial capacity in maintaining the ditch, it was not immune from a claim for damages arising from the torts of its agents. The court at page 337, said:

''The controlling question of law raised is whether a drainage district organized under the Farm Drainage Act, Cahill's St. ch. 42, ¶ 120 *et seq.,* can in the performance of its duties, negligently and wrongfully damage and destroy the property adjoining its right of way without liability for such damage. Appellant contends that because of the constitutional provision that private property cannot be taken or damaged for public use without just compensation and the further provision that urges a remedy for every wrong and under the holdings of the Supreme Court of this State he is given a right of action under the facts proven in this case. Appellee relies chiefly upon the case of *Elmore v. Drainage Com'rs.,* 135 Ill. 269, whcih held expressly that a drainage district was a mere public involuntary quasi corporation, and that there is no corporate liability to respond in damages to an individual injured by the negligent or wrongful act of its officers, agents or servants—in other words,

that a drainage district was a governmental agency and in performance of its duties as such could not be held liable for negligence. It seems to us that this doctrine is not only modified but repudiated by the court in the case of *Bradbury v. Vandalia Levee & Drainage District*, 236 Ill. 36. It clearly holds that a drainage district is not a governmental agency and that the commissioners thereof do not have public duties thrust upon them *nolens volens*.

Also that the organization of a drainage district is for the sole and exclusive benefit of the territory within the district, citing *Commissioners of Union Drainage District No. 3 v. Commissioners of Highways of Township No. 40*, 220 Ill. 176. In the case of *Ringering v. Wood River Drainage & Levee District*, 212 Ill. App. 170, the court in relying on the *Bradbury* case held that drainage commissioners in adopting plans and specifications for drainage work act in a judicial or quasi judicial character, and hence are not liable for such acts, but when they undertook to carry into effect such plans, they acted in a ministerial capacity and the drainage district was liable for the consequences of their acts, citing *City of Chicago v. Seben*, 165 Ill. 371, and *Johnston v. City of Chicago*, 258 Ill. 494. *It seems to us that in burning off the weeds and brush on the right of way, the commissioners of the drainage district were pursuing their proprietary or private functions and are liable for damages caused by their negligent or wrongful acts."*

In *Farrow v. Eldred Drainage & Levee District*, 268 Ill. App. 432, a judgment was recovered against the Drainage District for the sum of $3,000 for alleged injury to crops upon the real estate of the plaintiff located adjacent to a levee and drainage ditch constructed and maintained by the defendant. After the judgment was affirmed by the Appellate Court for the Third District, the case was taken to the Supreme

Court. The opinion of the Supreme Court in *Farrow v. Eldred Drainage District & Levee District*, 359 Ill. 347, states at page 348:

"The judgment above referred to was affirmed by the Appellate Court for the Third District (268 Ill. App. 432,) and later a petition for *certiorari* was denied by this court." A branch of that case went to the Supreme Court, entitled, *Eldred Drainage & Levee District v. Wilcoxson*, 365 Ill. 249, to review a judgment of the county court against the lands lying in the drainage district. In affirming the judgment the Supreme Court, held:

"Under Section 37 of the Levee act a drainage district may levy an assessment to pay a judgment for damages inflicted upon a property owner by reason of the work of the district, no funds being available to pay the judgment; and it cannot be contended that such an assessment is invalid under section 31 of article 4 of the constitution on the ground that the assessment will not benefit the lands of the district."

Most of the questions raised in the so-called assignment of errors cannot be reviewed owing to the lack of a certificate of evidence, but we think sufficient appears from the authorities which we have cited which clearly shows that such action may be maintained against a drainage district for having caused damage to the property of another. The complaint charges that agents and servants of the District, other than the commissioners, were guilty of negligence. In the absence of a certificate of evidence, we cannot tell which of them was responsible for the acts which caused the damage.

In the state in which we find this record, we must indulge the presumption that the trial judge had sufficient evidence before him to justify the action which he took.

For the reasons herein given the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., concurs.

MR. JUSTICE BURKE dissenting: It will be observed that plaintiff brought his action against the Lincoln-Lansing Drainage District, a body politic and corporate, and Peter Bultema, Ben Ruiter and Otto F. Kalvelage. The individuals were the duly appointed qualified and acting commissioners of the district during the time the events complained of took place. The case was submitted to the jury as to all the defendants. The jury found the Drainage District guilty and assessed plaintiff's damages at the sum of $3,500. The verdict of the jury, however, made no finding as to the individual defendants despite the fact that forms of verdict as to such defendants were given to the jury. The action of the jury in returning no verdict as to the individuals is equivalent to a finding of "not guilty" with reference to them. (*Wilderman v. Sandusky,* 15 Ill. 59; *Wabash R. Co. v. Keeler,* 127 Ill. App. 265.) The Drainage District argues that the individual commissioners having been found "not guilty," there can be no recovery against the district. The complaint charges that the Drainage District and its agents and servants "including the commissioners of said Drainage District" were guilty of various acts of negligence and also wilful and wanton conduct, all of which resulted in damage to plaintiff's leased land. It is manifest that the liability of the District is grounded upon the rule of *respondeat superior.* The individuals were the officers or servants of the district. The order to dynamite the right angle dam, bulkhead, weir and spillway could only be given by the commissioners. Clearly, if the dynamiting was done without authority of the commissioners, the Drainage District would not be liable. The complaint

is grounded on the theory that the dynamiting was by authority of the District. If the individual commissioners were guilty of the negligence and wilful and wanton conduct charged in the complaint, then they were primarily liable. Plaintiff, however, had the right to join the District and the commissioners. He could have dismissed the commissioners out of the case before it was submitted to the jury. He did not do so. According to the weight of authority, where a master and servant are sued jointly in an action based solely on the tortious conduct of the servant, and the servant is acquitted, there can be no recovery against the master. A verdict against a master and acquitting the servant is equivalent to a finding that no cause of action exists and will not support a judgment against the master. (Corpus Juris 39, page 1367, sec. 1602.) The reason for the rule is that the servant's liability is primary and that of the master secondary or derivative, depending on his duty to respond for the fault of his servant in the line of his employment. When relations between the two are left undisturbed, the master has the right to recover over against the servant for any liability imposed upon the former by the misconduct of the latter, but if the latter is exonerated in an action between him and the injured person, this status is destroyed and the master prevented from such recovery.

Plaintiffs do not question the propositions of law. They seek to overcome the argument of the Drainage District by pointing out that paragraph 18 of the complaint charges that the ''Drainage District, its agents and servants, including the commissioners of said Drainage District, and the defendants, Peter Bultema, Ben Ruiter and Otto F. Kalvelage, were each guilty of the acts of negligence set out.'' They argue that in view of the fact that no transcript of testimony has been brought to this court that the judgment should be sustained on the basis that the

"agents and servants, including the commissioners" of the District were guilty of the acts charged. This is a Drainage District of limited area and resources, and the commissioners who are the individual defendants were well acquainted with all of the activities of the district. The action of the District in dynamiting was directed by the commissioners. If it was done without the authority of the commissioners, then the District would not be liable. No one will argue that if a trespasser went on the property of the District and did the dynamiting that the District would be responsible. It is obvious that the complaint is based on the theory that the dynamiting was done on orders of the commissioners.

My view is that the Drainage District's motion for a judgment notwithstanding the verdict should be granted.